Cutler Corporation, Appellant *v*. Latshaw.

Argued April 14, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

2 

Appeal, No. 112, 

 

*Leon S. Forman,* with him *Bennett & Bricklin, Albert L. Bricklin* and *Milton M. Bennett,* for appellant.

*Arthur M. Soll,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 27, 1953:

On November 20, 1951, Jennie M. Latshaw contracted in writing to pay the Cutler Corporation the sum of $6,456.00 for certain work to be done and material to be furnished in repairing her premises at 914 S. 49th Street, Philadelphia. Dissatisfied with the manner in which the work was being performed, Miss Latshaw ordered the employes of the plaintiff corporation to cease operation until defects in the work were corrected.

On July 23, 1952, the Cutler Corporation confessed judgment against Miss Latshaw in the sum of $5,238.56 under an alleged warrant of attorney contained in the contract. The defendant petitioned for a rule to show cause why the judgment should not be stricken from the record; the lower court made the rule absolute; and the plaintiff appealed.

The contract consisted of five form sheets carrying certain printed matter. The face of each sheet began with a standardized identification of the parties and

the designating of the plaintiff and defendant, respectively, as "Contractor" and "buyer."

Then followed in small type the wording: "Upon your acceptance below, you are hereby requested by the undersigned owner of the installation premises, hereinafter called 'Buyer,' to furnish and install the materials shown in the following specifications at the installation premises mentioned below (subject to conditions on reverse side)".

In the middle of the sheet, in large type, appeared the single word: SPECIFICATIONS. Beneath this word, *in handwriting*, followed a list of the various items of work to be done and materials to be supplied by the plaintiff.

The reverse side of each sheet carried in very small type eight paragraphs, No. 6 of which spelled out a warrant of attorney with confession of judgment. Although each reverse sheet also carried the word, SPECIFICATIONS, with "Continued" in parentheses, no specifications were listed. This, in spite of the fact that the entire list of the specifications could not be contained on the first sheet and had to go over to other sheets. In fact, with the exception of the printing indicated, the reverse sides of the sheets were blank.

Did Miss Latshaw authorize a warrant of attorney and confession of judgment? In the case of *Griffin Oil Co. v. Toms,* 170 Pa. Superior Ct. 203, the plaintiff entered a judgment against the defendant on a warrant of attorney contained in an "Equipment Agreement." This document was not signed by the defendant but it was attached to an "Owner's Consent" bearing the defendant's signature. The "Owner's Consent" acknowledged notice of the agreement and contained an assent to its terms and conditions. In affirming the lower court's striking off the judgment, the Superior

Court said: "In a proceeding to strike off a judgment, only matters apparent on the face of the record will be considered. Peerless Soda Fountain Service Co. v. Lipschutz, 101 Pa. Superior Ct. 568, 571. On the present record it conclusively appears that defendant did not sign the agreement containing the warrant of attorney. An authority to confess judgment must be clear and explicit. Solazo v. Boyle, 365 Pa. 586, 76 A. 2d 179. There was no authority for entering a judgment by confession against defendant who had not signed the warrant of attorney; a judgment by confession must be self-sustaining on the record."

Equally in the case at bar the defendant did not sign the warrant of attorney-confession of judgment. The reference on the face side of the contract to the "conditions" on the reverse side, among which was buried the supposed authority for a warrant of attorney, can hardly be accepted in a court of law as an acknowledgment of a confession of judgment. While the word "condition" may conceivably embrace almost any circumstance, upon which, or, because of which, a right is created or a liability attaches, it cannot be used to mean surrender of fundamental personal and property absolutes unless the word appears within a setting which warns of the potency of the capitulation being made.

A warrant of attorney authorizing judgment is perhaps the most powerful and drastic document known to civil law. The signer deprives himself of every defense and every delay of execution, he waives exemption of personal property from levy and sale under the exemption laws, he places his cause in the hands of a hostile defender. The signing of a warrant of attorney is equivalent to a warrior of old entering a combat by discarding his shield and breaking his sword. For that reason the law jealously insists on proof that this help-

lessness and impoverishment was voluntarily accepted and consciously assumed.

The case at bar falls far short of producing evidence that Miss Latshaw was even aware that a warrant of attorney was remotely contemplated. The physical characteristics of the five-page document demonstrate that the reverse sides were entirely ignored. Although the sizeable blank spaces on the reverse pages could have been utilized for the continuing enumeration of specifications, the parties adopted additional sheets, writing only on the faces thereof, for that list. In the absence of any explanation as to why five pages were used when three would have sufficed (employing the reverse sides), the conclusion is inescapable that the parties purposely intended not to make the reverse sides of the sheets any part of the contract.

The mere physical inclusion of the warrant of attorney in a mass of fine type verbiage on each reverse sheet does not of itself make it part of the contract. In the case of *Summers v. Hibbard,* 153 Ill. 102, 38 N.E. 899, the question arose as to whether certain printed phrases on a letterhead became part of the contract entered into between the involved parties. The Supreme Court of Illinois held: "The mere fact that appellants wrote their acceptance on a blank form for letters, at the top of which were printed the words, 'All sales subject to strikes and accidents,' no more made those words a part of the contract than they made the other words there printed, 'Summers Bros. & Co., Manufacturers of Box-annealed Common and Refined Sheet Iron,' a part of the contract. The offer was absolute. The written acceptance which they themselves wrote was just as absolute. The printed words were not in the body of the letter or referred to therein. The fact that they were printed at the head of their letter heads would

not have the effect of preventing appellants from entering into an unconditional contract of sale."

In the case of *Sturtevant Co. v. Fireproof Film Co.*, 216 N.Y. 199, the defendant there sought to avoid liability on a contract because at the bottom of the plaintiff's letterhead, upon which the agreement was written, appeared the words: " 'All prices are subject to change without notice, and all contracts and orders taken are subject to the approval of the executive office at Hyde Park, Mass.' ", and there was no proof that the executive office at Hyde Park had approved the contract. The Court of Appeals of New York rejected this contention: "In view of the manner in which this provision is printed upon the stationery of the plaintiff it cannot be held, as a matter of law, that it was incorporated in and a part of the proposal. The language of the proposal is clear and explicit, and this provision, which is printed in small type, cannot be allowed to change, alter or modify it, unless it was a part of the proposal. It was not incorporated in the body of the proposal or referred to in it. . .

"When an offer, proposal or contract is expressed in clear and explicit terms, matter printed in small type at the top or bottom of the office stationery of the writer, where it is not easily seen, which is not in the body of the instrument or referred to therein, is not necessarily to be considered as a part of such offer, proposal or contract."

One of the most hateful acts of the ill-famed Roman tyrant Caligula was that of having the laws inscribed upon pillars so high that the people could not read them. Although the warrant of attorney in the numerous sheets of the contract at bar was within the vision of the defendant, it was so placed as to be completely beyond her contemplation of its purport. An inconspicuously printed legend on a contract form or letterhead

which is obviously fortuitous, irrelevant or superfluous is no more part of the agreement entered into than the advertisements on the walls of the room in which the contract is signed.

Diminutive type grossly disproportionate to that used in the face body of a contract cannot be ignored; it has its place in law, and, where space is at a premium, it allows for instruction, guidance and protection which might otherwise be lost, but where it is used as an ambush to conceal legalistic spears to strike down other rights agreed upon, it will receive rigorous scrutinization by the courts for the ascertainment of the true meaning which may go beyond the literal import. As early as 1858 this Court denounced subterfuge of fine print in *Verner v. Sweitzer*, 32 Pa. 208, where a common carrier sought to limit his implied liability by certain restrictions on the baggage check: ". . . it has been adjudged, that proof of general notice of limitation of liability, must be such as amounts to actual notice, or shown to have been so conspicuous, that the party sought to be affected by it could not have failed to discover it without gross negligence, the affirmative of which is upon the carrier. And that emblazoning the general object on a check, ticket, or notice, like the one used here, in large letters, but stating the restriction in small ones is insufficient."

So, also in *New York, N. H. & H. R. Co. v. Sayles*, 87 Fed. 444, it was held that a clause, limiting the liability of the carrier, impressed in red ink upon one corner of the paper, at right angles to the text of the freight receipt printed in black ink, was not part of the contract, unless brought to the attention of the shipper in such a manner that his assent thereto could be unmistakably implied: ". . . the red ink clause is practically not a part of the freight receipt. It was not originally printed as a part of such receipt, nor is it inserted in

a blank space left in such receipt for the purpose. By reason of its being superimposed, as it is, at right angles to the text of the receipt, and in one corner of the paper, it is no more a part of the contract than was the statement on the back of the paper receipt in Railroad Co. v. Manufacturing Co., 16 Wall. 318, where also the statement on the back was referred to in the body of the receipt. In legal effect, it was merely a rule or regulation which did not bind the plaintiff, unless so brought to the knowledge of his agent as to imply his assent upon his acceptance of the receipt."

Although these cases have to do with limitation on the liability of common carriers, their reasoning applies with equal force to the facts in the case at bar. When a party to a contract seeks to bind the other party with the unyielding thongs of a warrant of attorney-confession of judgment, a device not ordinarily expected by a homeowner in a simple agreement for alterations and repairs, the inclusion of such a self-abnegating provision must appear in the body of the contract and cannot be incorporated by a casual reference with a designation not its own.

Order affirmed.