**Nellie SWARB et al.**

v.

**William M. LENNOX et al.**

**Civ. A. No. 69–2981.**

United States District Court,
E. D. Pennsylvania.

June 1, 1970.

As Amended June 11, 1970 and
June 15, 1970.

Final Order June 16, 1970.

Charles H. Baron, Joel Weisberg, Philadelphia, Pa., for plaintiffs.

Blank, Rome, Klaus & Comisky, by Marvin Comisky, Philadelphia, Pa., for The Middle Atlantic Finance Assn., and others.

Theodore H. Lunine, Asst. City Solicitor, Philadelphia, Pa., for William M. Lennox and D. Barlow Burke.

Herbert Monheit, Deputy Atty. Gen., Philadelphia, Pa., for the Commonwealth.

Before VAN DUSEN, Circuit Judge, and WEINER and HANNUM, District Judges.

PER CURIAM:

SUR PLEADINGS AND PROOF

This action, requesting that the court declare the Acts of April 14, 1834, P.L. 333, § 77, 17 P.S. § 1482 (III); February 24, 1806, P.L. 334, 4 Sm.L. 270, § 28, 12 P.S. § 739; and March 21, 1806, P.L. 558, 4 Sm.L. 326, § 8, 12 P.S. § 738, and Pennsylvania Rules of Civil Procedure 2950 to 2976 and any operations thereunder to be unconstitutional and invalid, is now before the court after final hearing on application for a permanent injunction [1] restraining the defendant Sheriff of Philadelphia County and the defendant Prothonotary of the courts of that County from recording and executing upon any judgments by confession. On December 23, 1969, the assigned District Judge entered a temporary restraining order, staying the execution of judgments against the named plaintiffs (Document 4). This order was extended and amplified after the convening of the three-judge court by order dated January 12, 1970 (Document 6).[2] Amendments were made to

---

1. At a conference of counsel with the court in chambers on January 26, 1970 (see pp. 6 ff. of transcript, being Document 60), plaintiffs applied to have the hearing scheduled for February 6, 1970, as a final hearing on the application for injunctive relief requested in the complaint, and the named defendants (the Sheriff and the Prothonotary) stated they had no objection to this procedure. Subsequently counsel for defendant-intervenors agreed to this procedure by the attached letter of May 20, 1970.

2. By order of January 9, 1970, the assigned District Judge extended the stay until the "requested three-judge court is convened" and extended it to include approximately 47 additional named plaintiffs (Document 5). By orders of January 26, 1970 (Document 27), and Feb-

the complaint and additional parties were added as intervenors as follows:[3]

A. Octavius Green was dismissed as plaintiff (Document 35).

B. The Middle Atlantic Finance Corporation, Oxford Finance Companies, Inc., Valiant Finance Company, Friendly Consumer Discount Company, Fidelity Consumer Discount Company, Major Acceptance Corp., Carver Loan & Investment Co., Inc., Abbott Finance Company, Cardinal Consumer Discount Co., Western Finance Company, Peoples Consumer Discount Co., Scott Consumer Discount Co., Central Consumer Discount Co., Nu Way Finance Co., and Mid-Penn Consumer Discount Co. were allowed to intervene as parties defendant (order of February 3, 1970—Document 41).

The Pennsylvania procedure challenged in this suit permits a debtor to sign an agreement containing a clause authorizing the Prothonotary, court clerk, or any attorney to appear in any court, at any time, to confess judgment against the debtor for any unpaid portion of the debt along with various fees and charges.

(See footnote 14 below.) The burdens of establishing a defense imposed upon a defaulting debtor who has signed a contract containing a confession of judgment clause and against whom judgment has been entered are greater than those faced by the typical debtor. The judgment entered as a result of a confession clause has the same force and effect as any other judgment,[4] *i. e.*, it acts as a lien upon the debtor's presently owned property and on after acquired property if the judgment is revived in the case of real property or is executed upon in the case of personal property. After learning that a judgment has been entered against him, the debtor has two modes of relief. The first available remedy is a petition to strike the judgment. This petition is available only in those cases where irregularities constituting fatal defects are apparent on the face of the record.[5] The other available remedy is the petition to open judgment.[6] The most striking feature of this latter petition is that the burden of proof is placed upon the debtor who is considered the proponent of a claim and who must convince the court of the need for equi-

---

ruary 4, 1970 (Document 40), the temporary restraining order, staying the execution of writs based on confessed judgments, was continued in favor of all "individual natural persons who are residents of the Commonwealth of Pennsylvania and who may be subject to execution of writs by the Sheriff of Philadelphia County issued upon judgments entered under the acts or rules challenged herein, or who have had such judgments entered against them by the Prothonotary of the Court of Common Pleas of Philadelphia County under those acts or rules, or who have signed contracts authorizing such judgments to be entered against them under those acts or rules even though such judgments may not yet have been so entered." By order of May 14, 1970 (Document 64), there was excepted from the order executions on judgments "entered on such confession of judgment clauses in bonds and warrants of attorney accompanying mortgages."

3. The following were allowed to appear as amici curiae for the purpose of

filing briefs and, in some cases, making oral argument:

The National Consumers Law Center (see notes of Official Court Reporter of February 3 and Document 28)

The Pennsylvania Consumer Finance Association (Document 36)

Pennsylvania Industrial Bankers Association (Document 44)

Insured Savings Associations of Philadelphia and Suburbs (order of 2/6/70 —Document 47)

Pennsylvania National Association for the Advancement of Colored People, Philadelphia Council of Industrial Organizations, C.I.O., the Consumers Education and Protective Association, and the Urban League of Philadelphia (see Document 61 and transcript of argument on March 30, 1970).

4. P. Shuchman, Handbook on the Use of Judgment Notes in Pennsylvania § 1.1 (1961).

5. *Id.* at § 38.1.

6. *Id.* at § 41.1 et seq.

table relief.[7] See Ahrens v. Goldstein, 376 Pa. 114, 102 A.2d 164 (1954); Lukac v. Morris, 108 Pa.Super. 453, 164 A. 834 (1933). The placing of this burden upon the debtor is in direct contrast to the burdens in a normal or pre-judgment creditor-debtor action. In those cases instituted by a creditor against a debtor, the creditor is considered the proponent of a claim and the burdens are his.

In seeking to open a judgment, the debtor must proceed on depositions. Pa. R.Civ.P. 209. See Kine v. Forman, 404 Pa. 301, 172 A.2d 164 (1961). These depositions provide the only basis upon which the assigned judge decides the case. Besides the burden and expense necessitated by the preparation of these transcripts, the debtor will also require the services of an attorney. Another item of expense necessitated by this petition is the Sheriff's costs incurred for the staying of the Sheriff's sale.

The Pennsylvania Supreme Court has described this procedure as follows in Cutler Corp. v. Latshaw, 374 Pa. 1, 97 A.2d 234, 236 (1953):[8]

"A warrant of attorney authorizing judgment is perhaps the most powerful and drastic document known to civil law. The signer deprives himself of every defense and every delay of execution, he waives exemption of personal property from levy and sale under the exemption laws, he places his cause in the hands of a hostile defender. * * * For that reason the law jealously insists on proof that this helplessness and impoverishment was voluntarily accepted and consciously assumed."[9]

■ Judgments and executions entered in accordance with the above procedure comply with the due process of law clause of the Fourteenth Amendment provided that there has been an understanding and voluntary consent of the debtor in signing the document containing the confession of judgment clause. See National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); American Surety Co. v. Baldwin, 287 U.S. 156, 168–169, 53 S.Ct. 98, 77 L.Ed. 231 (1932). However, if there has not been such an understanding consent, the above-described Pennsylvania procedure violates the due process requirements of notice and an opportunity to be heard prior to the entry of judgment. Sniadach v. Family Finance Corp., 395 U.S. 337, 339–340, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969);[10] Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 313–315 and 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Coe v. Armour

---

7. *Id.* at § 41.2: "The burden is on the petitioner to make out a case which will justify action by the judge sitting as chancellor. Clearly a mere conflict of evidence is insufficient. There must not only be a preponderance of evidence to support the rule, but it must carry such a conviction of truth as to assure the court that the judgment should be opened and a jury trial awarded; * * *."

8. A review of legislation and case law in this field is contained in Hopson, Cognovit Judgments: An Ignored Problem of Due Process and Full Faith and Credit, 29 U.Chi.L.Rev. 111 (1961). See, also, Grant, Resort to the Legal Process in Collecting Debts From High Risk Credit Buyers in Los Angeles, etc., 14 U.C.L.A. L.Rev. 879, 887 ff. (1967); Translating Sympathy For Deceived Consumers Into Effective Programs For Protection, 114 U.Pa.L.Rev. 395, 418–19 (1966).

9. In Frantz Tractor Company v. Wyoming Valley Nursery, 384 Pa. 213, 120 A.2d 303, 305 (1956), the court said:
"Where a lease contains a warrant of attorney, the signature of the lessee must bear such direct relation to the provision authorizing the warrant as to leave no doubt that the lessee signed, conscious of the fact that he was thereby conferring upon the lessor a warrant to confess judgment against him for a breach of a covenant of the lease."
See, also, Atlas Credit Corporation v. Ezrine, 25 N.Y.2d 219, 30 N.Y.S.2d 382, 250 N.E.2d 474 (1969).

10. As pointed out in this case at page 339, 89 S.Ct. 1820, the issue is not the wisdom of the Pennsylvania procedure, and this record does not present the question of whether such procedure is justified in "extraordinary situations."

Fertilizer Works, 237 U.S. 413, 422–426, 35 S.Ct. 625, 59 L.Ed. 1027 (1915); cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. The evidence must be examined to determine whether understanding consent to this Pennsylvania procedure is present in the execution of the documents containing such clauses by members of the class on whose behalf this suit is brought.

The record made at the hearing in February 1970 [11] included a stipulation specifying that the named plaintiffs would testify to one or more of the following facts if called:

(1) That the first notice which they received of any action being taken against them on a judgment entered before January 1, 1970, was the notice that a Sheriff's sale was being scheduled upon their real or personal property.

(2) That when they contacted the judgment plaintiff or his counsel to try to arrange to prevent the scheduled execution of a writ upon the confessed judgment, they were told that the original debt had become enlarged by penalties, execution costs, and fees for the judgment plaintiff's attorneys in the liquidated amount of fifteen to twenty per cent. of the alleged debt remaining.

This stipulation contains approximately 2½ legal-size pages of confessed judgments entered against 47 named plaintiffs.[12] These judgments vary in amount from $249.23 to $25,800.00. The stipulation also recites that writs have been delivered to the Philadelphia Sheriff upon many of these judgments for the purpose of having execution on such judgments and that "notices received by

Plaintiff debtors after judgment has been entered contain no explanation of the procedures to be followed in order to stay a sale or set aside judgment." The stipulation also recites:

"E. That debtors who wish to attack the validity or correctness of a judgment confessed against them are able to do so only by filing a petition to open or strike.

"F. That debtors who must stay a sheriff's sale during the pendency of their petitions must pay whatever sheriff's costs have accrued before the stay will be made effective.

"G. The Philadelphia Bar Association Minimum Fee Schedule provides for attorney's fees of $150 for the filing of a petition to open.

"H. That where transcripts of depositions must be prepared for the Court, they must be transcribed at a cost to the petitioner of $1.00 per page.

"I. That the remaining unpaid portion of debtors' obligations are increased by a 15–20% attorney's fee in those cases in which execution is filed.[13]

\* \* \* \* \* \*

"K. That in 1968, Defendant Burke, Prothonotary of the Court of Common Pleas of Philadelphia recorded 52,601 judgments by confession, which number was over 50% of all actions docketed by his office during the year.

\* \* \* \* \* \*

"M. That the lien created by the entry of a judgment by confession is not divested by the granting of a petition to open judgment but only after the petitioner has been successful in defending on the merits."

---

11. A MOTION TO DISMISS (Document 13) filed by the original defendants was withdrawn at the beginning of this hearing (N. T. 7). A second stipulation providing for the admissibility of the Caplovitz study (marked Exhibit P–81) was filed May 19, 1970.

12. The stipulation also recites that judgments by confession have been entered against other plaintiffs in the class bringing this action under the statutes and rules challenged in the complaint which are referred to above.

13. An examination of the confession of judgment clauses in the notes received in evidence (P–1 through P–44, P–54, P–63, P–64 and P–69) discloses that the confessed judgments cover "costs" as well as attorney's fee.

The evidence in the record indicating that the named plaintiffs did not knowingly consent to the entry of the judgments against them or to the execution of such judgments consists of the following:

A. The testimony of Doris Mims, who lived in a home held in her name as trustee for her son and earned approximately $6100. per year, after reading a confession of judgment clause contained in a note which she had signed previously (N.T. 47–48),[14] that she could not understand its meaning and could not explain it to the court (N.T. 48).

B. The testimony of Mr. Thomas Veney, a detective with the Consumers Fraud Division of the District Attorney's office, that 95% of the notes brought to him by those complaining of fraud contained confession of judgment clauses which were not understood by the persons signing such notes. He was asked to explain what procedures he followed after receiving a complaint in his office. He testified that he reviewed the loan papers and explained the meaning of each of the clauses. Upon explaining the meaning of the confession of judgment clause, in almost every case (N.T. 88), the debtor expressed disbelief and shock at both the existence of the clause and its legal meaning.

C. A study by David Caplovitz, Ph. D., entitled "Consumers in Trouble," dated February 1968, which included a survey of debtors in default in Philadelphia, as well as three other cities. The study included a sampling of debtors from the execution books (containing executions against real and personal property) in the office of the Sheriff of Philadelphia County. The study includes 245 Philadelphia debtors, the great majority of whom had semi-skilled or unskilled occupations (page 175). 56% of these debtors had family incomes below $6,000. and 18% earned less than $3,000. (page 188). Only 4% of the debtors had incomes of over $10,000. and only 12% had incomes between $8,000. and $10,000. Only 30% of the default debtors had graduated from high school (page 181). Of the 236 debtors who were aware of signing a contract, only 14% knew that the contract contained a confession of judgment clause (page 21).[15]

D. Testimony by Mr. Casnoff, an officer in a consumer finance company, that the only explanation given to signers of judgment notes was that

14. She read the clause, contained in plaintiffs' Exhibit P–13, as follows (N. T. 47–48) :

"A. Each buyer and co-buyer, jointly and severally, hereby authorize and empower the Prothonotary, Clerk or any attorney, or any court of record within the United States or elsewhere, at any time, to appear for each buyer and a co-buyer and to confess judgment as often as necessary against each buyer and of co-buyer and in favor of the holder, as of any term, with or without declaration filed for such sum or sums as may be payable hereunder with the cost of suit with 20 per cent added as attorney's fees. With respect to any judgment and exemption under any law now or hereafter in force, and each hereby agrees that real estate may be sold under a writ or execution and voluntarily condemns the same and authorize the Prothonotary or Clerk to enter said condemnation on such writ; and each buyer and co-buyer agrees that a true copy hereof, verified by affidavit made by the holder or someone acting on its behalf, may be filed in such proceeding in lieu of filing the original as warrant of attorney, any rule of court, custom to practice to the contrary notwithstanding. Any judgment entered hereon or of any prior note for which the note is in whole or in part mediately or immediately renewal shall be secured, security for the payment hereof and of any future note which is in whole or in part mediately or immediately renewal hereof."

15. 62% did not know whether the note contained such a clause or not, whereas 22% believed that there was no such clause in the contract. See, also, affidavit of Dr. Caplovitz attached to stipulation filed May 19, 1970, mentioned in footnote 11.

they were signing "a judgment note" (N.T. 102–104).

The foregoing evidence shows that many persons adversely affected by such confessed judgments have limited educational backgrounds and limited resources. Cf. Sniadach v. Family Finance Corp., *supra,* 395 U.S. at 340–342, 89 S.Ct. 1820.

■ Although the complaint as amended (par. 4(f)) alleges a class action on behalf of all "individual natural" Pennsylvania residents "who have signed contracts authorizing * * * judgments to be entered against them," under the above acts and rules, the evidence offered by plaintiffs does not justify a finding that contracts other than notes used in consumer transactions,[16] including leases and consumer loans, are signed by such residents without an understanding of their significance. As noted above, the principal evidence of such lack of understanding was presented in the testimony of Miss Mims, Mr. Veney, Mr. Casnoff, and through Dr. Caplovitz's study entitled "Consumers in Trouble," all of which considered notes incident to consumer transactions and consumer financing. Confession of judgment clauses in bonds and warrants of attorney accompanying mortgages are normally signed at Title Company settlements[17] and notice of execution on the mortgaged property must be given by certified mail under Philadelphia Common Pleas Rule 3129* (f) (1), which is not referred to in the complaint. Furthermore, under Regulation Z (12 C.F.R. 226 ff.) and Form NRR–3 (ID–2), there must be affirmatively called to any home mortgagor's attention the fact that he is subjecting his home to a lien in signing any such bond and warrant of attorney, and he is given three days within which to rescind the transaction. We find that plaintiffs have not sustained their burden of proof of the lack of valid consent to the confession of judgment procedure involved in the execution of bonds and warrants of attorney accompanying mortgages. Since the Supreme Court of the United States has consistently held that a rule of constitutional law is not to be formulated "broader than is required by the precise facts to which it is to be applied" [Liverpool, N.Y. & P. Steamship Co. v. Emigration Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)], this record requires that any relief in this case be confined to a class consisting of individual natural Pennsylvania residents signing leases and consumer financing agreements, other than bonds and warrants of attorney accompanying mortgages, containing confession of judgment clauses.[18] See Mishkin v. New York, 383 U.S. 502, 512–513, 86 S.Ct. 958, 965, 16 L.Ed.2d 56 (1966) ("The far-reaching and important questions tendered by this claim are not presented by the record with sufficient clarity to require or justify their decision."); C. I. O. v. McAdory, 325 U.S. 472, 475, 65 S.Ct. 1395, 89 L.Ed. 1741 (1945).

■ Furthermore, the record does not support a determination that this action may be maintained as a class action on behalf of individual natural persons with incomes of over $10,000. signing documents containing confession of judgment clauses. As pointed out above, only 4% of the debtors in the Caplovitz study earned more than $10,000. There has been no showing that these plaintiffs are representative parties who fairly and

---

16. By "consumer transactions" we include those in which the party to whom credit is extended is a natural person and in which the money, property or services which are the subject of the credit transaction are primarily for personal, family, or household purposes. See Moo, Legislative Control of Consumer Credit Transactions, 33 Law & Contemp. Prob. 656, 665 (1968).

17. We do not find Mr. Casnoff's testimony at N. T. 100 and 107 persuasive.

18. F.R.Civ.P. 23(c) (4) contemplates that relief may be granted to a sub-class of those instituting the action and as to particular issues.

adequately protect the interest of persons signing confession of judgment notes who have incomes of over $10,000. See F.R.Civ.P. 23(a) (4). It is conceded that the holding required by this record may make it more difficult for those affected by this decision to secure credit and there is no necessity of extending such possible consequences to persons not fairly represented in the action. For these reasons the court makes the determination required by F.R.Civ.P. 23 (c) (1) that this action may be maintained on behalf of those individual natural persons signing confession of judgment clauses in leases and consumer financing transactions who are residents of Pennsylvania having incomes of less than 10,000. a year. F.R.Civ.P. 23(c) (4) provides that a class action may be brought or maintained as to particular issues. The evidence in this case has been directed to the signing of agreements in lease and consumer credit transactions—see footnote 16 above. This record supports the grant of relief in situations where confession of judgment clauses have been signed in such situations.

Intervening defendants contend that there is no substantial basis in the record for a finding that the individual judgment debtors in the class represented by plaintiffs do not understand that the confession of judgment clauses authorize a judgment to be entered against them before default, without notice, constituting a lien on their real and personal property, and that such judgment is subject to execution with only 20 days' notice. We find that the testimony of Miss Mims that she could not understand the meaning of the clause is credible. The language would not be clear to many persons who had not completed high school (67% of the subjects of the Caplovitz study—p. 181). Mr. Veney found that the individuals complaining to him expressed "disbelief" and "shock" when the meaning of the clause was explained to them (N.T. 88). Legal writers commenting on the clause have repeatedly stated in recent years [19] that the low income consumer neither anticipates such clauses in consumer contracts nor understands such clauses. See Cutler Corp. v. Latshaw, *supra*, 97 A.2d at 238 ("a device not ordinarily expected by a homeowner in a simple agreement for alterations and repairs"); Abolition of the Confession of Judgment Note in Retail Installment Sales Contracts in Pennsylvania, 73 Dick.L. Rev. 115, 116,[20] 118 [21] (1968); Shuchman, Consumer Credit by Adhesion Contracts, 35 Temple L.Q. 125, 134 (1962).[22]

In Wuchter v. Pizzuti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), the Court

19. Over 30 years ago, Professor Llewellyn wrote ("Book Reviews, the Standardization of Commercial Contracts in English and Continental Law. By O. Prausnitz," 52 Harv.L.Rev. 700 (1939)) :

"* * * contract ceases to be a matter of dicker, bargain by bargain, and item by item, and becomes * * * a matter of mass production of bargains, with the background (apart from price, quantity, and the like) filled in not by the general law but by standard clauses and terms, prepared often by one of the parties only— * * *.

* * * * *

"* * * 'agreements' only a fraction of which has ever been agreed to, * * *." 52 Harv.L.Rev. at 700 & 705.

20. "* * * invariably the low-income consumer is completely uninformed concerning the nature and consequences of his signing such an instrument at the time of the sale."

21. "* * * while it has been repeatedly held that the defendant's signature upon the judgment note constitutes consent to waiver of notice, such 'consent' is fictitious since the low income consumer understands neither the character nor possible ramifications of the note."

22. "As a rule, neither party to the contract has any but the barest comprehension of its terms * * *. Rarely does the installment seller (who will discount his paper to the bank or finance company), and almost never does the borrower or consumer have any understanding of the instrument which is placed before him for the affixation of his hand and seal with intent to be legally bound thereby."

held that a state procedure for assuming jurisdiction of a nonresident motorist participating in an accident in the state must contain a reasonable provision for probable communication to such defendant of actual notice that the action had been instituted, even though his use of the highways constituted an agreement to be sued in such state, using this language at page 19, 48 S.Ct. at page 261:

"A provision of law * * * that leaves open * * * a clear opportunity for the commission of fraud or injustice is not a reasonable provision, and * * * would [deprive] * * * a defendant of his property without due process of law."

The Supreme Court of the United States has consistently stated that there is no presumption that a person acquiesces in the waiver of his constitutional rights. See Ohio Bell Tel. Co. v. Public Utilities Comm., 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937);[23] Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966). In the latter case, the Court said:

"There is a presumption against the waiver of constitutional rights, see, e. g., Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 464–465, 86 L.Ed. 680, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst,

304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

"In deciding the federal question of waiver raised here we must, of course, look to the facts which allegedly support the waiver."

After a careful examination of the record, we find that there was no intentional waiver of a known right by members of the above class in executing the confession of judgment clauses. The evidence indicates that the debtors did not fully understand the rights which they were relinquishing by signing these notes, that is, the right to have notice and an opportunity to be heard prior to judgment, the right to have the burden of proving default rest upon the creditor before their property could possibly be exposed to execution, and, finally, the right to avoid the additional expense of attorney's fees and costs incident to opening or striking off a confessed judgment under the above-described Pennsylvania procedure.

Since the procedure used for entry of confessed judgments on the above-mentioned notes is based on the concept of a waiver of notice without adequate understanding by the debtor, it violates the due process clause of the Fourteenth Amendment. It is not our function to dictate to a state exactly what constitutes understanding waiver of notice in each particular case and what proof of such notice would comply with the above-mentioned decisions.[24] Where the debtor

---

**23.** In this case, the court said at page 307, 57 S.Ct. at page 731:

"As there was no warning of such a course, so also there was no consent to it. We do not presume acquiescence in the loss of fundamental rights."

**24.** Proof has been required by federal statute since 1918 of non-military service of those against whom judgments are entered. See 50 U.S.C.App. § 520; Feller, Moratory Legislation: A Comparative Study, 46 Harv.L.Rev. 1061 (1933); Skilton, The Soldiers and Sailors Civil Relief Act of 1940 and the Amendments of 1942, 91 U.Pa.L.Rev. 177 (1942). The entry of confessed judgments in situations

covered by this legislation has been regulated in some Pennsylvania counties by rules similar to Philadelphia Court of Common Pleas Rule *921, which provides as follows:

"(a) Before a default judgment may be entered in any case against a defendant who has failed to file an appearance, or where judgment is sought upon a warrant of attorney to confess judgment contained in any document * * * an affidavit must be filed by the plaintiff setting forth facts showing that the defendant is not in the military service, or that he or she is in the service, or that plaintiff is unable to determine

is an attorney, all that may be necessary to prove that he understood the meaning and consequences of such a clause in a consumer financing note is an affidavit of such a debtor's profession. On the other hand, more proof may be required of non-high school graduates since the phraseology of the clauses in the notes offered in evidence is most difficult for laymen to understand. We do not believe that the 20-day notice provision prior to execution of a confessed judgment under Pennsylvania Procedural Rule 2958(b), as recently revised, grants sufficient time to permit a debtor with limited resources to secure an attorney to undertake the above-described procedures for opening or striking off a confessed judgment.

■ For the foregoing reasons, we hold that no judgment by confession may be entered by defendants on a lease or note given in a consumer or a consumer financing transaction against individual natural Pennsylvania residents whose income is less than $10,000. a year, where such documents provide substantially that the Prothonotary or any attorney may confess judgment for the amount due under the document, plus attorney's fees and costs. The class in favor of whom the judgment and permanent injunction shall issue will consist of all individual natural persons whose income is less than $10,000. per year who are

residents of Pennsylvania and who have signed leases and notes given in a consumer or consumer financing transaction, which leases and notes provide that the Prothonotary, Clerk, or any attorney may confess judgment for the amount due under the note or lease plus attorney's fees and costs. See Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa. 1968); School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F. Supp. 1001 (E.D.Pa.1967).

■■ We hold that this decision shall have prospective application to judgments sought to be entered on clauses signed before and after the date of the final order in this case against members of the above class by confession after November 1, 1970, or the expiration of the next session of the Pennsylvania General Assembly if the 1970 session has permanently adjourned by that date.[25] See McSparran v. Weist, 402 F.2d 867, 877 (3rd Cir. 1968); Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631, 637–39 (1967). The temporary restraining order, which will terminate November 1, 1970, or at the expiration of the next session of the Pennsylvania General Assembly if the 1970 session has permanently adjourned by that date, will be modified to prevent the entry of judgments by confession against the above

whether or not he or she is in the service, to which may be added facts which would justify entry of judgment." The rule further provides that if the status of the debtor is unknown, the court shall appoint counsel to make an independent investigation and report to the court. A similar statewide rule or legislation providing for the filing of proof of intentional, understanding and voluntary consent to confessed judgments in order to comply with this opinion is among the methods available to permit use of the confession of judgment clause if Pennsylvania decides to continue this system. See Leary, "Random Reflections on Remedies and Collections in the Consumer Credit Field," 19 American U.L.Rev. 189, 198–200 (particularly footnote 32 at p. 199), 210–213, 228–230 (1970).

25. As noted above, the confession of judgment procedure has been authorized by the Pennsylvania Legislature for over 150 years and is also now governed by very helpful provisions in the Pennsylvania Rules of Civil Procedure. In reliance on cases such as *American Surety Co., supra,* the confession of judgment procedure has been considered to be valid under the Federal Constitution. See, for example, Bower v. Casanave, 44 F.Supp. 501, 507 (S.D. N.Y.1941), where the court said:
"Obviously it is not unconstitutional. It needs no further citation of authority to show that judgments by confession have been recognized and ruled upon by the United States Supreme Court."
Under such circumstances, a constitutional rule may be made prospective in operation. See Schaefer, op. cit. *supra,* at 643–646, and cases there cited.

class based on the above-described documents which are signed after the date of the final order, to be submitted in accordance with this opinion.

█ In addition to the prospective relief granted by this decision to those with incomes under $10,000. who have signed consumer credit transaction documents and leases with confession of judgment clauses, those members of the above-described class protected by the terms of the temporary restraining order issued in this case, as amended from time to time (see footnote 2 above), are entitled, prior to execution on confessed judgments entered prior to the date specified above, to the opportunity of a hearing on such claims conducted in accordance with the procedural guarantees [26] of the due process clause.[27] See Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631, 637–39 (1967). For example, at such hearings the burden of proving default, execution of the obligation, the amount due, and other elements necessary to execution will be on the creditor, but if such burden is sustained the judgment will be subject to the execution on the basis that it continues to be effective from the date of its entry.

Counsel may submit a decree in accordance with the foregoing opinion.[28]

WEINER, District Judge (concurring and dissenting in part):

Although I concur in the foregoing opinion, I believe the Pennsylvania procedure is unconstitutional as applied to all members of the class on behalf of whom this suit has been instituted, irrespective of whether or not their income exceeds $10,000.

## FINAL ORDER, PERMANENT INJUNCTION AND REVISED TEMPORARY RESTRAINING ORDER

And now, June 16, 1970, after consideration of the record, including the amended opinion containing findings of fact and conclusions of law filed June 1, 1970, and the four letters of June 5, 8, and 9, which are filed with this order, it is ordered and decreed as follows:

A. This action may be maintained and is determined on behalf of a class consisting of those individual natural persons, resident in Pennsylvania and having incomes, or conjugal incomes where both spouses have signed the documents described below, of less than $10,000. per year at the time of the execution of such documents, who have signed confession of judgment clauses in leases and consumer financing documents (hereinafter referred to in this order as "relevant documents"), excluding bonds and warrants of attorney accompanying mortgages and notes, such

26. As stated in Goldberg v. Kelly, *supra*, 397 U.S. at 267, 90 S.Ct. at 1020, "the hearing must be at a meaningful time and in a meaningful manner."

27. This right to a hearing prior to execution on such judgments entered by confession applies to judgments entered after the date of the final order on confession of judgment clauses in documents dated prior thereto.

28. The Clerk is being asked to give notice of the filing of this opinion to the Governor and the Attorney General, who may secure a copy in the regular way through the Deputy Attorney General appearing at the hearings. Also the Clerk is being asked to send copies of the opinion to the Lieutenant Governor, as President of the Senate, the President Pro Tempore of

the Senate, and to the Speaker of the House of Representatives. Also a copy has been sent to Sidney Schulman, Esq., Secretary of the Committee on Pennsylvania Rules of Civil Procedure, who has cooperated fully with the court in explaining the efforts of the Pennsylvania Procedural Rules Committee to comply with all requirements of the Federal Constitution. This should enable such steps as are deemed appropriate to be taken by the General Assembly and the Pennsylvania Procedural Rules Committee before November 1, 1970, or the last day of the next session of the General Assembly if the 1970 session should adjourn sufficiently before November 1, 1970, that it does not have time to act before adjournment of the current session.

as FHA Form No. 9171N, accompanying mortgages required by governmental agencies.

B. On and after November 1, 1970, or at the expiration of the next session of the Pennsylvania General Assembly if the 1970 session has permanently adjourned by that date, defendants and intervening defendants, their agents, successors and assigns, are permanently restrained and enjoined from entering any judgments against members of the class described in paragraph A of this order on the basis of confession of judgment clauses in relevant documents, unless it has been shown that the signers of such clauses have intentionally, understandingly, and voluntarily waived all the rights lost under Pennsylvania law, as described in the opinion of June 1, 1970, as amended, when executing a document containing such a clause, provided, however, that

(1) the liens of judgments by confession previously recorded are preserved, and

(2) confessions of judgments may be entered of record after the date of this final order upon documents executed prior to the date of this final order, provided the recording is accomplished prior to the date recited above in this paragraph B.

C. The practice in Pennsylvania of confessing judgments under the Acts of April 14, 1834, P.L. 333, § 77, 17 P.S. § 1482 (III); February 24, 1806, P.L. 334, 4 Sm.L. 270, § 28, 12 P.S. § 739; and March 21, 1806, P.L. 558, 4 Sm.L. 326, § 8, 12 P.S. § 738, and Pennsylvania Rules of Civil Procedure 2950 to 2976, 12 P.S.Pa.Appendix is hereby declared unconstitutional, effective as of the dates stated in this order, as applied on the record in this case to the above class of persons.

D. The Temporary Restraining Order, as amended on May 14, 1970, is further revised to provide as follows:

"IT IS ORDERED AND DECREED that unless modified by further order of this court and until the applicable date stated in paragraph B of this order,

(1) no judgment may be entered against members of the class described in paragraph A of this order upon relevant documents dated after the date of this final order, unless it has been shown that the signers of such clauses have intentionally, understandingly, and voluntarily waived all the rights lost under Pennsylvania law, as described in the opinion of June 1, 1970, as amended, when executing a document containing such a clause, and

(2) no execution on judgments entered by confession on relevant documents defined in paragraph A of this order against the members of the class described in such paragraph A shall be processed by the defendant Sheriff and the defendant Prothonotary, provided, however, that those members of the class described in paragraph A of this final order of June 15, 1970, who have been protected by the terms of this temporary restraining order, as amended from time to time (see footnote 2 of the above-mentioned opinion), will be subject to execution on confessed judgments entered prior to the date specified in paragraph B above, provided that they have been granted the opportunity of a hearing on the claims forming the basis of such judgments conducted in accordance with the procedural guarantees of the due process clause of the Fourteenth Amendment, as set forth in the above-mentioned opinion, and that if the creditors establish the validity of such judgments and secure leave of the state court to execute thereon, in accordance with this proviso, the judgment subject to execution shall be effective as of the date of its original entry."