J-A21027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DONALD OLSON AND 6 BITS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN F. SAYERS, IV AND K.S.A. VENDING, INC. | |
| Appellant | No. 243 EDA 2014 |

Appeal from the Order Entered December 18, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2013-03601

BEFORE:  BOWES, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 21, 2014**

John F. Sayers, IV (Sayers) and KSA Vending, Inc. (KSA) appeal from the order entered on December 18, 2013, in the Court of Common Pleas of Montgomery County, denying Sayers' and KSA's Petition to Open and/or Strike Confessed Judgment.  Sayers and KSA claim the trial court erred because: (1) they were never served with the complaint confessing the judgment, (2) KSA filed for bankruptcy, (3) the amount at issue is incorrect, and (4) Olson and 6 Bits, Inc. (Olson) agreed to forgive the debt.  After a thorough review of the submissions by the parties, certified record, and relevant law, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We adopt the factual and procedural history as related by the trial court in its Pa.R.A.P. 1925(a) Opinion.

> On June 14, 2010, Donald Olson, the president of 6 Bits Vending, Inc., [] entered into a purchase agreement ("Agreement") with John Sayers, IV and KSA Vending, Inc. The Agreement provided 6 Bits to transfer the ownership of vending machines to [Sayers and KSA], for which [Sayers and KSA] agreed to pay $55,000 in thirty-six consecutive payments of $1,530.00 due on or before the tenth day of each month. If payments were not timely made, a late fee of $470.00 would be added to the amount due. The Agreement also contained a confession of judgment provision, which provided for the recovery of principal, interest, late fees and an [sic] attorney's fees.
>
> Since May 10, 2011, [Sayers and KSA] have been delinquent on the installment payments. As a result, on February 6, 2013, [Olson] filed a confession of judgment against [Sayers and KSA] in the amount of $53,506.46. Also on that day, the Prothonotary sent out Rule 236 Notice of Judgment to [Sayers and KSA].
>
> Thereafter, [Sayers and KSA] filed a Petition to Open and/or Strike Judgment Entered by Confession. This Court denied [Sayers' and KSA's] Petition, and [Sayers and KSA] now appeal from this Court's determination.

Trial Court Opinion, 2/27/2014 at 1-2 (footnote omitted).

We further note that the Confession of Judgment signed by Sayers provided he would be jointly and severally liable with KSA for the debt to Olson. **See** Complaint for Confession of Judgment, Exhibit "A" Confession of Judgment. Documents submitted by Sayers and KSA indicate that Kimberly M. Sayers, a/k/a KSA Vending, filed for Chapter 13 Bankruptcy protection on February 21, 2012. **See** Petition to Open and/or Strike, Exhibit E, Bankruptcy Docket. Finally, KSA is a domestic corporation with a registered

office in West Conshohocken, Pennsylvania. Kimberly M. Sayers was the President, Secretary and Treasurer of KSA. *See* Response to Petition to Open and/or Strike, Exhibit C Business Entity Filing History.

> Our standard of review regarding Appellant's petition to strike default judgment is well settled. Appellant's first issue questions the applicability of a Pennsylvania Rule of Civil Procedure to the instant case. As this presents us with a question of law, our standard of review is *de novo* and our scope of review is plenary. **Skonieczny v. Cooper**, 37 A.3d 1211, 1213 (Pa. Super. 2012) (*citing* **Boatin v. Miller**, 955 A.2d 424, 427 (Pa. Super. 2008)).
>
> "A petition to strike a judgment operates as a demurrer to the record, and must be granted whenever some fatal defect appears on the face of the record." **First Union Nat. Bank v. Portside Refridgerated Servs., Inc.**, 827 A.2d 1224, 1227 (Pa. Super. 2003) (*quoting* **PNC Bank v. Bolus**, 440 Pa. Super. 372, 655 A.2d 997, 999 (1995)). "When deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a judgment, a court may only look at what was in the record when the judgment was entered." **Cintas Corp. v. Lee's Cleaning Servs., Inc.**, 549 Pa. 84, 700 A.2d 915, 917 (1997) (*citing* **Linett v. Linett**, 434 Pa. 441, 254 A.2d 7, 10 (1969)). "Importantly, a petition to strike is not a chance to review the merits of the allegations of a complaint. Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief." **City of Philadelphia v. David J. Lane Advertising**, 33 A.3d 674, 677 (Pa. Cmwlth. 2011) (*citing* **First Union Nat'l Bank**, 827 A.2d at 1227). Importantly, "[a] petition to strike does not involve the discretion of the [trial] court." **Cintas Corp.**, 700 A.2d at 919 (*citing* **Dubray v. Izaguirre**, 454 Pa. Super. 504, 685 A.2d 1391, 1393 (1996)).

**Oswald v. WB Public Square Associates, LLC**, 80 A.3d 790, 793-94 (Pa. Super. 2013) (footnote omitted).

"A petition to open judgment is an appeal to the equitable powers of the court. As such, it is committed to the sound discretion of the hearing

court and will not be disturbed absent a manifest abuse of discretion." ***Stahl Oil Co., Inc. v. Helsel,*** 860 A.2d 508, 513 (Pa. Super. 2004).

Initially, we will address Sayers' and KSA's claims regarding the petition to strike. The first claim is that judgment must be stricken because the Complaint for entry of Confession of Judgment was not served on either Sayers or KSA; therefore the trial court did not have jurisdiction over them. This argument is unavailing.

Signing a confession of judgment acts as a waiver of certain due process rights, allowing a creditor to obtain a judgment by permission of the debtor as long the confession was the product of a knowing and voluntary consent. ***See Swarb v. Lennox***, 314 F.Supp. 1091, 1095 (E.D.Pa. 1970). It is only when the confession of judgment has been unknowingly and/or involuntarily signed that the due process requirement of notice has been violated. ***Id***. Accordingly, a creditor initiates the confession of judgment by filing the complaint[1] with all attendant documentation, ***see*** Pa.R.C.P. 2952, with the Prothonotary, who then provides notice of the entry of the judgment to the debtor. The method of notice is provided by Pa.R.C.P. 236. We note that in ***PNC Bank v. Kerr***, 802 A.2d 634 (Pa. Super. 2002),

---

[1] We note that a complaint for confession of judgment differs significantly from other forms of complaint in that a complaint for confession of judgment is specifically exempt from containing either a notice to defend or a notice to plead. ***See*** Pa.R.C.P. 2952(b).

- 4 -

although the issue of service was not in question, filing the complaint with the Prothonotary and notice mailed by the trial court was the method used therein. Instantly, the docket confirms that the complaint for confession of judgment was filed with the Prothonotary, and that the Prothonotary then mailed the requisite notice. Neither Sayers nor KSA has alleged the signing of the confession of judgment was unknowing or involuntary. Accordingly, notice of the judgment was properly given.[2]

Because Sayers and KSA have not demonstrated the existence of a fatal defect on the face of the record regarding service, they are not entitled to strike the judgment.

Next Sayers and KSA claim KSA is not responsible for the confession of judgment because it was discharged from bankruptcy. In support of this claim, KSA has filed with the lower court, the docket from Federal Bankruptcy Court, Petition #12-11488-ref. This docket lists the debtor as Kimberly M. Sayers, a/k/a KSA Vending.

---

[2] Sayers and KSA also claim that service of the notice of judgment and writ of execution was defective. However, Sayers and KSA have not provided any authority for the notion that defective service of the notice of writ of execution operated to divest the court of jurisdiction. It is the notice of execution that triggers the 30-day period in which to file a petition to open and/or strike. Where a defendant is represented by counsel, the notice of execution may be mailed to counsel pursuant to Pa.R.C.P. 2958.1(b)(2). This is the manner of service chosen by Olson. Counsel entered his appearance for Sayers and KSA on February 27, 2013 and notice of execution was served via mail to counsel on March 7, 2013.

The docket reflects that bankruptcy protection was sought pursuant to Chapter 13 of the Bankruptcy Code. Chapter 13 applies to "individuals with regular income", not corporations. **See** 11 U.S.C. § 109(e). **See also**, **Forestry Products, Inc. v. Hope**, 34 B.R. 753 (M.D.Ga. 1983) (corporation is not an individual eligible for relief under Chapter 13.) Kimberly Sayers may have been personally responsible for certain debts associated with KSA, for which she sought protection under Chapter 13. However, Kimberly M. Sayers is not a defendant in this matter, and as far as the certified record is concerned, bears no personal responsibility for any debts incurred by KSA. Accordingly, based upon the record before us, her discharge from bankruptcy is immaterial to the confession of judgment filed against KSA.[3]

Next, Sayers and KSA claim that the judgment should be stricken or opened because the amount claimed is incorrect.

> A challenge to the accuracy of the amounts allegedly due under the instrument, or an error in computation, should be resolved in a petition to open unless it is evident from the face of the instrument that the amount is grossly excessive or not authorized by the warrant to confess judgment.

**Germantown Sav. Bank v. Talacki**, 657 A.2d 1285, 1291 (Pa. Super. 1995) (citations omitted). The amount of the judgment entered was

---

[3] As a practical matter, we understand that KSA may have no assets and/or may no longer exist. That fact does little to help Sayers, as the confession of judgment he signed renders him jointly and severally liable for the debt at issue. Therefore, even if KSA is incapable of making any payment to Olson, Sayers would still be responsible for the entire debt.

$53,506.46. This sum was derived from adding $49,012.00 unpaid balance, $1,946.54 interest, and $2,546.23 attorney's fee.[4] **See** Entry of Appearance and Confession of Judgment, 2/6/2013. Sayers and KSA claim the judgment amount is in error by the amount of $12,240.00. Sayers and KSA argue that the $49,012.00 in principal owed[5] should actually be $36,772.00. That number is based upon the undisputed fact that Sayers and KSA made a total of $18,228.00 in payments against the original $55,000.00 owed.

Although neither the trial court nor Olson itemized the $49,012.00 claimed as principal owed, it is nonetheless apparent that the sum properly credited Sayers and KSA with the entire $18,228.00 paid. However, Sayers' and KSA's argument neglects to account for the late fees that are explicitly included as collectable in the confession of judgment.[6] Pursuant to Sayers' and KSA's own evidence, they made 10 timely payments out of the 36

---

[4] These numbers actually add up to $53,504.77, not $53,506.46. This appears to be simply a $1.69 error in addition.

[5] While the Entry of Appearance and Confession of Judgment lists this amount as "Principal or Penal Sum", the Complaint for Confession of Judgment refers to the sum as the "Unpaid Balance of Instrument". **See** Complaint for Confession of Judgment, 2/6/2013, at ¶ 10(a).

[6] The Confession of Judgment lists the amount collectable as including "interest and late fee costs, release of errors, and attorney's commission." See Confession of Judgment, 6/14/2010, ¶ 3. Attorney's commission and interest are separately accounted for in the Complaint for Confession of Judgment, leaving late fees, which are determined by terms of the contract.

payments required. Therefore, there were 26 late payments,[7] on which $470.00 was also owed, equaling $12,220.00. Given that Sayers and KSA complain of a $12,240.00 error and the late fees amount to $12,220.00, we reject Sayers' and KSA's claim, and further find the $20.00 difference is *de minimus*. Accordingly, we conclude the actual calculation does not represent a fatal defect in the amount owed or an abuse of discretion, and therefore, Sayers and KSA are not entitled to relief on this issue.

The final argument is that Olson agreed to forgive the debt. This argument is unavailing by Sayers' own evidence. The deposition of John F. Sayers, IV, taken June 14, 2013, and submitted as evidence in this matter, contains the following relevant exchanges.

> Q [Counsel for Olson]: And he expressly said that you no longer have to make payments pursuant to the agreement [after losing the YMCA account]?
>
> A: He did not say it that way, but he understood the fact that we weren't going to be able to make the payments. That's why he decided to utilize my employee.

Sayers' Deposition, 6/14/2013, at 33.

> Q [Counsel for Sayers/KSA]: You mentioned before that Don Olson spent more time than you did working to get the contract renewed for the Y; is that correct?
>
> A: Correct.

_____

[7] Here, "late" incudes payments made in less than the full amount owed and payments not made at all.

Q: And that was after the Purchase Agreement was signed; is that correct?

A: Correct.

Q: Why was he spending the bulk of the time doing that if he – his company, 6 Bits, theoretically wasn't involved?

A: Well, one, he did say as pursuant to that contract that he would still act as an outside salesman, but he knew that the way this contract was that if we lost the Y.M.C.A., he loses out on his contract with us as our verbal agreement. That's why it would behoove him to make sure we kept that contract.

Q: I don't have anything else.

….

Q [Counsel for Olson]: Did he make it – did he agree that the only reason he put in the effort was because he knew that his contract would be null and void if he did not continue?

A: Yes.

Q: Did he say that – he said that to you?

A: He didn't say it to me that way. He did say that he would end up losing interest.

Q: I'm sorry? Could you explain that?

A: He felt that it we lost the Y.M.C.A., he said that he knew he wasn't going to get paid.

*Id*. at 37-39.

We agree with the trial court that these exchanges do not represent an intent to modify the contract by forgiving the debt. Sayers' testimony reveals only that Olson was aware of the fact that if Sayers and KSA lost their contract with the Y.M.C.A., then Sayers and KSA would not have

sufficient income to make the required payments to 6 Bits. Therefore, to help protect his contract with Sayers and KSA, Olson attempted to help Sayers and KSA regain the Y.M.C.A. contract. Sayers' testimony cannot be reasonably interpreted as Olson saying if you cannot pay me, you do not have to fulfill the contract. Because there is no evidence that Olson agreed to forgive the debt, this argument is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2014