**Betty SELLERS, Adella May Edmonds, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**Fred J. CONTINO, Constable, Edward J. Lynch, Constable, Edward Prygon, Constable, On Behalf of Themselves and All Others Similarly Situated, Defendants,**

**Delaware County Board of Realtors, Intervenor.**

**Civ. A. No. 70–1946.**

United States District Court, E. D. Pennsylvania.

April 22, 1971.

Sharon Kaplan Wallis, Philadelphia, Pa., Jon J. Auritt, Chester, Pa., for plaintiffs.

Robert J. Jackson, Chester, Pa., Edward A. Savastio, Llanerch, Pa., Stephen S. Smith, Upper Darby, Pa., for defendants.

Before VAN DUSEN, Circuit Judge, and LORD and FULLAM, District Judges.

SUR PLEADINGS AND
PROOF

VAN DUSEN, Circuit Judge.

This case is now before the court on plaintiffs' application for an expansion of the preliminary injunction entered September 22, 1970 (N.T. 212 of Document 20), and for a permanent injunction (N.T. 118).

The complaint was filed on July 17, 1970, by Betty Sellers and Adella May[1] on behalf of themselves and all persons similarly situated. The complaint alleges that the defendants,[2] under the provisions of the Landlord and Tenant Act of 1951, 68 Pa.Stat. §§ 250.302–313, and the customs and usages associated therewith, conduct levies and sales in distress for rent and charge tenants for these services the fees set by law. Plaintiffs seek relief under 42 U.S.C. § 1983 and claim that these acts violate the due process and equal protection clauses of the Fourteenth Amendment, and also contravene the Fourth and Ninth Amendments in that the distraint procedures involve unreasonable searches and seizures by public officials and unjustified infringements upon the constitutionally protected rights of privacy and the sanctity of the home. Finally, plaintiffs claim a chilling effect upon tenants in the exercise of their constitutionally protected rights to organize, to report Housing Code violations, and to take advantage of their statutory and common law rights and remedies to improve their housing conditions.

On October 26, 1970, the opinion by a three-judge court in Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970), was filed, invalidating the sale provision of the Act[3] on behalf of a class of plaintiffs made up of the tenants in the City of Philadelphia with an income within the range established by the OEO from time to time as the income of a poor urban family. Id. at 290–291.

Plaintiffs in this case seek to expand the class to include persons with a moderate income as well as poor persons. Moreover, plaintiffs request that we declare all the sections of the Landlord and Tenant Act of 1951 unconstitutional and not merely the sales provision. Thus, plaintiffs seek an order declaring invalid those sections of the Act providing that a tenant's personal property is subject to distress for rent due, the drawing up of the tenant's list of furniture and other goods, the notice in writing of the distress,[4] and the restraints on removal of the distrained property.

Plaintiffs pray that this court (1) enjoin the defendants from executing levies and sales in distress for rent with respect to the named plaintiffs and members of the class of low and moderate income tenants residing in Delaware County, Pennsylvania, and (2) declare Article III, Section 302 et seq., of the Pennsylvania Landlord and Tenant Act of 1951 unconstitutional on its face or as applied to the plaintiffs and the class they represent. The court issued a temporary restraining order on July 17, 1970.[5]

---

1. While the action was pending, on August 15, 1970, plaintiff Adella May married Henry Edmonds and an order was entered on October 26, 1970, amending the caption to read "Adella May Edmonds."

2. At the time suit was brought, all defendants held the office of constable in Delaware County, Pennsylvania.

3. 68 Pa.Stat. § 250.309 provides, in one of its sentences, for sale of the goods distrained.

4. Such notice stating "the cause of the taking, specifying the date of the levy,

and the personal property distrained sufficiently to inform the tenant or owner what personal property is distrained and the amount in arrears, shall be given * * * within five days after making the distress, to the tenant * * * or by posting the same conspicuously on the premises charged with the rent." 68 Pa.Stat.Ann. § 250.302 (1951).

5. This order directed, until further order of the court, "that all defendants who have been served or who are represented by counsel of record, their agents, servants and employees and all persons acting by, through or under them, or by

On August 13, 1970, a three-judge court was convened pursuant to the provisions of Section 2284, Title 28, United States Code. Hearings were held on September 11 and 22 and December 18, 1970.[6]

Appendix A contains a statement of the facts as found by the court.

## I. Determination of the Class

■ The plaintiffs Edmonds and Sellers, as well as the witness Turoski, fall within the class defined in our order of September 22, 1970, as including tenants who have an income which qualifies them as poor under the guidelines published periodically by the Office of Economic Opportunity.[7] No evidence has been presented as to the exact income of the witness Hawkins, although she testified that she received public assistance. See page 236, infra, and N.T. 89–90. The remaining witness, William McGehean, clearly has an income in excess of the guidelines and therefore does not fall within the class as defined in such order. However, McGehean has not shown a violation of his constitutional rights in the use of the distraint procedure[8] and testified solely as a witness. For these reasons, the record does not justify expansion of the class.

We will permit the named plaintiffs to maintain the suit, except as to Fourth Amendment claims, on behalf of the class as defined in the order of September 22. As stated under IV below, the claims of plaintiffs do not include claims of violations of the Fourth and Ninth Amendments and hence they are not in a position to adequately represent the class as to such claims (see paragraph 14 of the Complaint).

## II. Jurisdiction

We have subject matter jurisdiction of this suit for the reasons stated in Santiago, supra, at 291–292.

## III. Unconstitutionality of Distraint Procedure Insofar As The Tenant Is Deprived of Property Before Notice and Hearing

■ The sale of property which has been subjected to distraint pursuant to

their order, be and they hereby are restrained from selling, threatening to sell, or advertising for sale. any property belonging to the members of the plaintiffs' class or their families, and from interfering with the plaintiffs' possession and control of the aforementioned personal property of the members of the plaintiffs' class, pursuant to or under color of Article 3, Section 302 of the Pennsylvania Landlord and Tenant Act of 1951, 68 P.S. 250.302." On September 11, 1970, this temporary restraining order was extended by agreement until final determination of the preliminary injunction application (N.T. 91 of Doc. 19). On October 22, an amended temporary restraining order was filed (pursuant to an oral ruling from the bench on September 22—see N.T. 212), in the exact terms of the order of July 17, except that the following words were added at the end: "unless there has been a prior judicial determination that rent is due."

6. On September 22, the court permitted the Delaware County Board of Realtors to intervene as defendant. Motions to dismiss and for summary judgment were filed by defendants the same day. On September 24, 1970, the plaintiffs filed a motion for determination of the class.

7. See N.T. 213 of Document 20; Santiago v. McElroy, 319 F.Supp. 284, 291 n. 10 (E.D.Pa.1970). The Revised OEO Income Poverty Guidelines, OEO Instruction 6004–1b (December 1, 1970), for poor families in urban areas are:

| Family Size | Income |
| --- | --- |
| 1 | $1,900. |
| 2 | 2,500. |
| 3 | 3,100. |
| 4 | 3,800. |
| 5 | 4,400. |
| 6 | 5,000. |
| 7 | 5,600. |

Add $600. for each additional family member.

8. Mr. McGehean apparently concedes that he was not justified in withholding his rent as he has learned that he did not follow the proper procedure in attempting to secure repair of his sink. Under these circumstances, the record indicates that he is not entitled to injunctive relief (N.T. 102–03).

68 Pa.Stat. § 250.309 without a prior due process hearing is unconstitutional. *See* Santiago v. McElroy, *supra.*[9] There can be no presumption from the signing of leases that poor tenants understandingly and knowingly waive their constitutional right to such notice and hearing through the inclusion in the lease of clauses such as paragraph 8th of the McGehean lease.[10]

Part III of the final order in *Santiago* enjoined the defendants in that case from threatening to sell the tenants' property. This record supports the finding that defendants in this case often serve notices of distraint in Delaware County which contain threats of sale. *See* pages 235–236, *infra.* To the extent that the notices contain such threats, they are violative of plaintiffs' constitutional rights of due process.

*IV. Alleged Violations of Fourth Amendment Rights*

■ The named plaintiffs have not demonstrated any evidence of unreasonable searches and seizures in violation of their Fourth Amendment rights or violation of their rights under the Ninth Amendment. For this reason, they are not in a position to act as representatives of the class in making such claims. See F.R.Civ.P. 23(a) (3) and (4).

■ Also we have concluded that the evidence is not sufficient to sustain a finding of an unreasonable search of the witness McGehean's apartment in violation of his Fourth Amendment rights. We have considered paragraph 6th of the McGehean lease, permitting inspection of the tenant's apartment at any time.[11] The McGehean lease was the only Delaware County lease offered as an exhibit, and there was no showing that all Delaware County leases contain such clauses. In light of these facts, we cannot hold that this is an adhesion contract and that paragraph 6th is not a valid waiver of any Fourth Amendment claim with regard to an inspection for the purposes of making a distraint on the property of a tenant who is behind in rent. After consideration of all the facts surrounding the entry into Mr. McGehean's apartment, we cannot say the search was unreasonable.[12] *See Wy-*

---

9. Parts II and III of the Final Judgment in the *Santiago* case provide:
   "II. DECLARATORY JUDGMENT
   "1. A declaratory judgment is hereby entered declaring Section 309 of the Pennsylvania Landlord and Tenant Act of 1951, 68 P.S. § 250.309, is violative of the Due Process Clause of the United States Constitution and therefore invalid and void as applied to members of the plaintiff class, insofar as it provides for sales of goods found on leased premises without a prior due process hearing.
   "III. INJUNCTIVE RELIEF
   "The defendants Howard Gabreil, Leonard J. Rosenfledt, George Lansberg, Joseph Stone, Jerold J. Cohen, Al Sacks, Morton L. Pinsker, Morris Winitz, Edward Cohen, Larry Snyder, and Joseph H. Kass Co., and members of the class they represent are hereby ordered permanently enjoined from selling, removing, threatening to sell, or advertising for sale any property belonging to or found in the homes of members of the plaintiff class, pursuant to or under color of the provisions of the Pennsylvania law, herein declared invalid and void."

10. *See* note a–3 at page 237, *infra.*

11. The paragraph states in part:
    "6th. The lessor reserves the right at all times to visit and inspect the demised premises, personally or by agent, and to cause any repairs to be made which he may deem proper; * * *."

12. The record shows no complaint by Mr. McGehean to the visit which may have occurred after he left his door ajar. There is no showing that anything in the apartment was disturbed. The visit was not connected with any criminal proceeding but, so far as the record shows, was for the purpose only of making a distraint on property of a tenant overdue in his rent. Likewise, no evidence was offered as to the unreasonableness of visits to other apartments. See page 238, *infra. See, also*, Laprease v. Raymours Furniture Company, 315 F.Supp. 716, 721–722 (N.D.N.Y.1970), and cases there cited. The *Laprease* decision specifically refers to action under state law "against the will of the owner" and no clause similar to that in clause 6th of the lease (Exhibit P–10A—see previous note) was involved. There is no

man v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (January 12, 1971).

In Conover v. Montemuro, 304 F.Supp. 259 (E.D.Pa.1970), the court said at page 263:

"In matters of constitutional law, it is especially appropriate to proceed guardedly in order to insure that there is a full and adequate record, rather than attempt to determine significant issues in the abstract."

Under the circumstances of this case, we have concluded that there is insufficient evidence in this record to justify class action injunctive relief based on violations of tenants' Fourth Amendment rights to be free from unreasonable searches and seizures. *See* Swarb v. Lennox, 314 F.Supp. 1091, 1098 (E.D. Pa.1970), and cases there cited.

### V. Alleged Illegality of Steps Taken By Constables Prior to Sale

■ This record does not prove any deprivation of the use of property by a distraint notice left on the premises as long as the property is left upon such premises. The removal by Mr. Turoski of his furniture which had been the subject of a levy at a time when he was two months' delinquent in the paying of his rent and when he knew that he was not permitted to remove the property until he had paid the rent does not justify the exercise of the court's discretionary power to issue an injunction. *See* Swarb v. Lennox, *supra*, at 1098. The Supreme Court of the United States has, over 40 years ago, announced "the important rule, which we desire to emphasize, that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." Mass. State Grange v. Benton, 272 U.S. 525, 527, 47 S.Ct. 189, 190, 71 L.Ed. 387 (1926). *See also* Douglas v. Jeanette, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

Plaintiffs' counsel shall submit to the court and serve within two weeks a form of final judgment [13] in accordance with the foregoing opinion. Counsel for defendants shall submit to the court and serve any comments on plaintiffs' form or its proposed form of final judgment within two weeks of receipt of plaintiffs' form of final judgment.

### APPENDIX A

TO OPINION OF APRIL 22, 1971 IN SELLERS ET AL. v. CONTINO ET AL., CIVIL NO. 70–1946 (E.D. Pa.)

Plaintiff, Adella May Edmonds, along with her three children, was a tenant at 628 DuPont Street, Chester, Pennsylvania, at all times herein relevant. N.T. 16. She paid a monthly rental of $68.00. She had no savings and her only source of income was a Social Security allowance and a supplemental public assistance grant, totalling $273.00 per month. N.T. 17–18. She withheld rent payments beginning in March 1970, when the roof of her apartment began to leak. N.T. 33–34, 58. She complained without success to the manager of her apartment. N.T. 34. In April she complained to the housing inspector and, as a consequence, the Chester Department of Public Safety certified the premises as "unfit for human habitation." N.T. 30; P–2.

Two deputy constables visited the apartment on or about July 6, 1970. One of them handed her a notice of distress directed to her and a notice of distress directed to her neighbor, Mary Brown. Mrs. Edmonds' notice stated that:

I have this day distrained the several goods and chattels specified in the inventory hereto annexed * * * for one hundred sixty one * * * Dollars, arrearages of rent due and

---

testimony by the named plaintiffs concerning unauthorized entries into their homes.

13. Cf. Final Judgment in Santiago v. McElroy (E.D.Pa., Civil No. 69–2792), dated November 30, 1970, as amended on February 5, 1971.

unpaid, and if you do not pay the same, together with costs of this proceedings, or replevy said goods and chattels according to law within five days hereafter, I shall cause the said goods and chattels to be appraised and proceed to sell the same according to the Act of Assembly in such case. * * *

The signature of Fred J. Contino, constable, appeared at the end of this document. The notice also stated that anyone who removes the property which is subject to levy is guilty of a misdemeanor and that constables or other authorized persons may enter the building containing the goods levied upon and that any interference with the preparations for sale constitutes a crime. P–3. On the reverse side of the notice, a list of furniture appeared under a column headed with the words "Inventory of Property Distrained." Written in red across the notice were the words "Payment in full by 7–13–70.".

Mrs. Edmonds testified that one of the officers told her that she had to move or pay the money owing within a week or else signs would be placed on her door and her furniture sold. N.T. 40–41, 51. He also told her that if she left, she did not have to pay the rent. N.T. 51–52.

Several days later, Mrs. Edmonds received in the mail a notice signed by Fred J. Contino, constable, which stated that:

A levy was made for rent due on July 6th.

Unless this is paid in full by July 13, sale signs will be posted for sale of household furnishings.

Sale will be held on July 16. N.T. 55–56; P–5.

Mrs. Edmonds testified that she could not afford an attorney and that if her furniture were sold she would not be able to replace it. N.T. 46–47.

Plaintiff, Betty J. Sellers, at the time in question lived at 626 DuPont Street, Chester, Pennsylvania, with her three children. She had lived at the address since about 1961. Her only income was a public assistance grant of $302.00 per month. Her rent was $17.00 per week, which was frequently paid a few days late. Affidavit of Betty Sellers, Exhibit A.

On or about July 6, the two constables who had approached Mrs. Edmonds came to her house and handed her a notice of distress, similar to one received by Mrs. Edmonds. N.T. 156, P–3; P–8. The notice stated that she owed $21.00 in back rent. No items were listed in the inventory column of the notice. Written across the notice were the words "Payment in Full By 7–13–70 or Be *Out*." P–8. One of the deputy constables, Anthony J. Federico, who was employed by Fred J. Contino, told her that she had to pay all her back rent by July 13 or her furniture would be sold. N.T. 147–48. Mrs. Sellers received in the mail later a notice similar to that mailed to Mrs. Edmonds (see page 236).

Mrs. Sellers testified [a–1] that she could not afford to replace the furniture if it were sold. She testified that she had heard of a constable sale in the area and was afraid her furniture might be sold. N.T. 84–85.

Vanetta Hawkins, a witness, receives public assistance and has lived during all times material to this case in a public housing project in Chester, Pennsylvania. After withholding rent because there was no heat in the housing project, she received a Copy of Landlord's Distraint Warrant, which was stuck under her door on or about February 11, 1970. N.T. 89–90, P–10. The warrant stated "I do hereby Levy on the following goods, being on the premises therein described." A list of furniture followed this statement. At the bottom appeared the printed name of E. S. Prygon, constable. Heat was restored to the apartment and she paid her rent. She did not pay the constable's fee. N.T. 90.

a–1. Her affidavit of July 15, 1970, attached as Exhibit A to the complaint, was accepted as testimony subject to being supplemented and contradicted by her testimony at the hearing.

Albert Turoski, a witness, testified that at the time the notice of distress was given him he lived at 1220–A Curran Street in Chester, Pennsylvania. N.T. 59–60. Mr. Federico's testimony indicates that Turoski lived with his wife and baby. N.T. 149, 152. In June 1970, he was two months behind in his rent. N.T. 61. A deputy constable, Anthony J. Federico, delivered to him personally a notice of distress dated June 16, 1970, similar to those received by Mrs. Edmonds and Mrs. Sellers. P–6. While talking to Mr. Turoski, who had opened his apartment door, the constable wrote down a list of the furniture in his living room. N.T. 150. Across the notice were written the words, "Payment in full by 6–22–70." P–6. Mr. Turoski knowing that the notice warned against removing furniture levied upon, took the furniture to another apartment. N.T. 61, 62, 69, 72.[a-2] A few days later, two constables returned and, after knocking on the door to Mr. Turoski's apartment and getting no answer, were admitted to the apartment by the superintendent. N.T. 150.

Notices were posted around the neighborhood stating that a sale would be held on a certain date. N.T. 64–65, 159. Subsequently, the officers went to the apartment where Turoski was staying and told him if he did not come to the office that day with the money, the constable would get a warrant for his arrest for moving goods under levy. N.T. 152. The next day the constables returned with a warrant for Mr. Turoski's arrest and told him to come with them. N.T. 64–65, 153, 175. The constables drove him to Constable Fred Contino's office. N.T. 65–66. Mr. Turoski told Constable Contino that he had a problem with drugs. N.T. 69–70. Then he was taken to the police station in Ridley Township, where he was placed in a cell for 45 minutes. N.T. 67–68, 70, 163–65. Subsequently he was admitted to Eagleville Hospital for treatment for narcotics addiction. N.T. 59, 71. Mr. Federico, the deputy constable, testified that no further efforts were made to collect the rent. N.T. 154. Mr. Turoski testified that at the time of the arrest he was out of work and was not being paid by his previous employer, Scott Paper. N.T. 72.

William McGehean, a witness, is a steam fitter by profession and earns between $15,000. and $16,000. per year. At all relevant times he resided at 207 Church Road, Morton, Pennsylvania, and paid $125.00 per month rent. N.T. 101.[a-3] He stopped paying rent a few

---

**a–2.** Section 250.305 of the Landlord and Tenant Act of 1951 provides that a landlord can seize personal property that has "fraudulently or clandestinely" been removed from the demised premises, anywhere he finds it and proceed as if he had distrained the personal property on the demised premises.

**a–3.** His lease agreement provided that: 4th. The lessee agrees that all goods and property on the demised premises shall be liable to distress for rent * * * and for all costs of such distress and officers' commissions, including the five per cent chargeable by the Act of Assembly to the lessor

*     *     *     *     *

8th. Lessee waives in favor of lessor all rights under the Act of Assembly of April 6, 1951, P.L. 69, and all supplements and amendments thereto that have been or may hereafter be passed and authorizes the sales of any goods distrained for rent at any time after five days from said distraint without any appraisement and/or condemnation thereof.

*     *     *     *     *

10th. The lessee waives all right of appeal from, or writ of error or certiorari to any judgment, order or decree that may be entered against him * * * for rent, damages, possession or otherwise; and does further expressly waive the benefit of any and all stay of execution or exemption from civil process under any law of the Commonwealth of Pennsylvania, or of the United States * * * this waiver to extend to and be applicable in any and all proceedings or actions for the recovery of possession, for damages, or for rent, whether by distress or otherwise * * *.

*See* Exhibit 10–A. *See also* paragraph 6, quoted in part in note 234, *supra.* Mr. McGehean apparently rented a furnished apartment (N.T. 165).

**238**

months before the September 22, 1970, hearing because his sink was broken. Subsequently, about August 12, 1970, he found a notice of distress taped to the outside of his door. The notice stated that he was $131.25 in arrears for rent. Some of his personal property was listed in the inventory column and across the notice were written the words "Payment in full By 8–20–70." The name John C. Kohler and an address were also written on the notice. Kohler was his employer. N.T. 103–04. Mr. McGehean testified that no one at the apartment, such as the superintendent, knew the name of his employer so that the only way the constable could have found out was to enter the apartment. N.T. 105–06. He testified that he did not lock his door but that he doubted he had left it ajar. N.T. 107–08. Deputy Constable Federico testified that Mr. McGehean's door was "about six to eight inches open," that he called McGehean's name, walked into the apartment, and saw the stub of a paycheck from which he got the name of Mr. McGehean's employer. N.T. 165–67.

Mr. Contino's men sometimes contact the superintendent of the building in which the particular lessee lives, get him to open the apartment of the lessee, and write down an inventory of the lessee's apartment. If neither the lessee nor the superintendent is on the premises, Mr. Federico testified that he places the notice underneath the door of the apartment, but does not take an inventory, although the law requires entrance into the apartment and the taking of an inventory for a levy. N.T. 167–69. 68 Pa.Stat.Ann. § 250.302; Santiago v. McElroy, 319 F.Supp. 284, 287–288 (E.D. Pa.1970). Referring to Mrs. Sellers' situation, Mr. Federico admitted that the notice of distress was invalid because of the lack of entry, but stated that the notice was used merely as a notice "that someone is behind in their rent." N.T. 170. Even if a levy is not made, Mr. Federico testified that a constable fee is still charged. Also, Constable Contino stated that in most of these instances a

levy is finally made, even if the constables must make several trips, and that only the one charge is made. N.T. 187–88. He also testified that if the rent is paid in response to the first notice, he sometimes collects the constable fee even if there has been no levy. N.T. 189. There are approximately 340 levies in distress for rent executed in Delaware County per month. N.T. 191. Costs for the levies are chargeable to the tenants ordinarily. N.T. 185, 189.