George and Dorothy **MUSSELMAN** et al.,
Plaintiffs,

v.

Alvine K. **SPIES** et al., **Defendants.**

Civ. A. No. 70–326.

United States District Court,
M. D. Pennsylvania.

May 25, 1972.

Donald B. Swope, H. Joseph Flynn, Tri-County Legal Services, York, Pa., for plaintiffs.

Markowitz, Kagen & Griffith, Liverant, Senft & Cohen, Allen H. Smith, York, Pa., for defendants.

Before VAN DUSEN, Circuit Judge, and HERMAN and MUIR, District Judges.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MUIR, District Judge.

### I. INTRODUCTION

This is a proceeding for injunctive relief which raises the issue whether Article III, Sections 302 et seq. of the Pennsylvania Landlord and Tenant Act of 1951 is facially unconstitutional or unconstitutional as applied to plaintiffs and the class they seek to represent in these proceedings.

Jurisdiction is predicated upon 28 U.S.C. § 1331, § 1343(3), § 1343(4), § 2201 and § 2281. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.

Upon the petition and affidavits of plaintiffs George and Dorothy Musselman, Eugene and Judith Newcomer, leave to commence and proceed in forma pauperis was granted, and the complaint was filed. The Judge to whom the petition was presented issued the following temporary restraining order:

"Now, therefore, on motion of plaintiffs, it is ORDERED that the defendants Alvine K. Spies and Malden H. Lucabaugh, their agents, servants and employees, and all persons acting by, through or under them or by their order be, and they hereby are, restrained from selling any property belonging to the plaintiffs,

George and Dorothy Musselman and Eugene and Judith Newcomer or found in their homes at Grantview Road, R.D. #3, Hanover, Pennsylvania and 906 West College Avenue, York, Pennsylvania, respectively and from entering or attempting to enter these premises or otherwise interfering with the plaintiffs' possession and control of the aforementioned personal property on the aforementioned leased premises, pursuant to or under color of Article III, Section 302 et seq., of the Pennsylvania Landlord and Tenant Act of 1951 (1951), April 6, P.L. 69 Section 302 et seq.; 68 P.S. Section 250.302 et seq. (1965)."

Subsequently, the temporary restraining order was extended pending a hearing on the application for a preliminary injunction. Defendants John Keesey, George Hansford, Ira W. Keech and Ralph D. Leber filed motions to dismiss and upon motion of the plaintiffs, these defendants were dropped from the suit. Defendants Bobby R. Johnson, James B. Singley, and Stanley L. Keller were also dropped as defendants on motion of plaintiffs on January 14, 1971. Thereafter, Defendant Malden H. Lucabaugh filed a motion to stay the proceedings pending a construction of the Pennsylvania statutes involved by the Pennsylvania courts and requesting for that reason that the court abstain. The three-judge court heard testimony on the plaintiffs' application and heard oral argument on defendant Alvine K. Spies' motion to stay. Decision on the motion to stay was reserved. At the close of the plaintiffs' case, defendant Alvine Spies moved to dismiss, and after oral argument the motion was denied without prejudice to his right to renew it at the close of the defendants' case. At the close of the defendants' case, Spies renewed his motion to dismiss and the matter was reserved for decision. On the same day, the Court enlarged the scope of the temporary restraining order previously entered by entering the following order amending the same:

"It is ordered that the defendants, Alvine K. Spies and Malden H. Lucabaugh and other constables of York County who are members of such class of constables of York County represented by Alvine K. Spies and Malden H. Lucabaugh, their agents, servants, and employees and all persons acting by, through or under them, or by their order, be and they hereby are restrained from advertising for sale, threatening to sell or selling any property belonging to low income tenants residing in York County, Pennsylvania, whose income qualifies them as poor under the guidelines published periodically by the Office of Economic Opportunity, such guidelines being most recently stated in OEO Instruction 6004–1(b), effective December 1, 1970; and from entering or attempting to enter premises of such persons or otherwise interfering with the plaintiffs' possession or control of the personal property on such leased premises pursuant to or under color of 68 P.S. § 250.309."

## II.  FINDINGS OF FACT

1.  Plaintiffs George and Dorothy Musselman are husband and wife, who at the time of the hearing in this matter resided at Gettysburg, R.D. #5, White Run Road, Pennsylvania.

2.  The remaining eight defendants herein are constables of York County, Pennsylvania.

3.  On May 6, 1970, the Musselmans and their six children occupied a farmhouse in Spring Grove, Pennsylvania, which they rented for $40.00 per month.

4.  The family's income at that time consisted solely of the earnings of Mr. Musselman, which amounted to $80.00 or $90.00 per week, and the Musselmans' assets consisted of various household items and furniture valued at less than $100.00. Finance companies held title to a 1961 Chevrolet truck and a 1961 Ford Falcon which the Musselmans used.

5. On May 6, 1970, the Musselmans were personally served at their Spring Grove residence with a Landlord and Tenant complaint stating that their landlord had brought suit for possession of the farmhouse the Musselmans were then renting and for judgment in the amount of $2.00 per day from May 1, 1970, until the farm was vacated by the Musselmans.

6. A hearing on the Landlord and Tenant complaint was held at the offices of Justice of the Peace Margaret Bealing, Glenville, Pennsylvania. Mrs. Musselman was present and was represented by Joseph Flynn of Tri-County Legal Services, York, Pennsylvania.

7. On May 1, 1970, the landlord obtained an order for possession of the premises, a copy of which was personally served upon the plaintiffs the same day. The order, signed by the Justice of the Peace, required the Musselmans to vacate the premises within ten days.

8. The Musselmans moved from the Spring Grove farmhouse to Grandview Road, R.D. #3, Hanover, York County, Pennsylvania.

9. On June 30, 1970, defendant Alvine K. Spies, Constable of York County, appeared at the Musselmans' new residence, made an inventory of certain of the personal property of the Musselmans contained in the house, and served the Musselmans with a Notice of Distraint claiming as due $81.20 in rent on the Spring Grove farmhouse, which the Musselmans had vacated and $5.90 in costs.

10. Plaintiffs Eugene and Judith Newcomer are husband and wife and at the time of the institution of this proceeding they with their child resided at 906 West College Avenue, York, Pennsylvania, in a first floor apartment which they rented from Mrs. Mary Flinchbaugh for $25.00 per week.

11. On June 16, 1970, when the Newcomers were served with a Notice of Distraint for rent due on their apartment, the Newcomers were both unemployed and were receiving welfare payments of approximately $110.00 per month.

12. On June 16, 1970, the Newcomers had no income other than welfare payments and had no assets other than their furniture which they had purchased for $16.00, a television set, and one automobile. On the date the Notice of Distraint was served upon them, their liabilities included outstanding loans of $1,400 from Seaboard Loan Company, $800.00 from Household Finance Company and $600.00 from Drovers & Mechanics Bank.

13. On June 16, 1970, defendant Malden H. Lucabaugh personally served upon the Newcomers, at their residence at 906 West College Avenue, York, Pennsylvania, a Notice of Distraint stating that the Newcomers owed $96.00 in rent and $18.50 in costs.

14. After serving the tenants with the Notice of Distraint, Constable Lucabaugh made a list of all the personal property on the premises, including some items which belonged to the landlord, and posted a Notice of Sale.

15. On the date of service of the Notice of Distraint, the Newcomers owed back rent of $96.00.

16. On or about June 29, 1970, the Newcomers received an advertisement of a sale in distraint of their personal property to satisfy the landlord's claim for the rent due and constable's costs. The sale was set for July 6, 1970, at 9:30 A.M.

17. The sale was not held because of the entry of the temporary restraining order, and the Newcomers remained at the 906 West College Address until the end of July, 1970.

18. In the case of the Newcomers, there was no judicial hearing on the landlord's right to distrain their personal property at which the Newcomers could have presented any defenses they might have had to the landlord's claim.

19. On January 27, 1971, Mrs. Sonia L. Shaffer with her husband and four children resided in an eight-room house they rented from one Adonolfi at 614

South Pershing Street, York, Pennsylvania.

20. At approximately 4:00 P.M. on January 27, 1971, defendant Lucabaugh and Adonolfi, the landlord, broke down the door of the Shaffer residence.

21. Constable Lucabaugh stated to Mrs. Shaffer that he was an officer of the law and that his purpose was to levy on the personal property of the Shaffers to satisfy the landlord's claim for the unpaid rent.

22. On the date of the Constable's levy, the Shaffers owed $450.00, or five months' rent on the South Pershing Street residence.

23. On January 27, 1971, the Shaffers had neither heat, with the exception of what was afforded by a space heater and a gas stove, nor electricity. The roof leaked, the bathroom ceiling and dining room ceiling had fallen and the bedroom walls were wet.

24. The Shaffer family's income consisted solely of the earnings of Mr. Shaffer, who was, at the time, a part-time truck driver for Aetna Freight Lines, receiving take-home wages of approximately $30.00 to $40.00 per week.

25. The Shaffers' assets consisted of a television set, a refrigerator, a dryer, a stove, living room furniture, and bedroom furniture. The Shaffers were still in the process of paying for the dryer and the television set on installment purchase plans.

26. On the day following the service of the Notice of Distraint, the Shaffers applied for and began to receive welfare benefits in the sum of $180.00 every two weeks.

27. Mrs. Shaffer was unaware of any waiver provisions contained in the written lease covering the South Pershing Street residence.

## III. DISCUSSION

Article III, Section 302 et seq. of the Pennsylvania Landlord and Tenant Act of 1951 [1] provides a procedure known as "distraint" or "distress" which enables a landlord rightfully to take possession of property found on his leased premises and to sell the property, without a prior judicial determination of his rights, to recover rent claimed. The Act provides certain remedies for tenants, including the right to institute an action in replevin,[2] upon the posting of bond in the sum of twice the value of the goods distrained, wherein the tenant may present defenses to the landlord's claim prior to sale of the distrained goods. Other remedies enable the tenant to recover monetary damages for wrongful distraint, but postpone a determination of the landlord's and the tenant's respective rights until after the sale of the distrained goods.

In this class action, the plaintiffs, in their own capacities, and as representatives of the class, seek injunctive relief from the harsh results of this statutory scheme.

The question of jurisdiction under 28 U.S.C. § 1343(3) was fully discussed in a similar challenge to the Pennsylvania distress for rent procedures in Santiago v. McElroy, 319 F. Supp. 284 (E.D.Pa.1970).[3] We adopt

---

1. Act of April 6, 1951, P.L. 69, Section 302 et seq.; 68 P.S. § 250.302 et seq.

2. See Pa.R.C.P. 1073(a), 12 P.S. Appendix; Pambosh Industries, Inc. v. Pittsburgh Western Land Corp., 30 Pa.Dist. & Co.R.2d 712, 111 Pitts.Leg.J. 327 (1963); Degillo v. Harry F. Goeringer & Sons, 39 Pa.Dist. & Co.R.2d 691 (1966).

3. See also Weddle v. Director, Patuxent Institution, 436 F.2d 342, 343–344 (4th Cir. 1970); Osmond v. Spence, 327 F.

Supp. 1349, 1351–1353 (D.Delaware, 1971); Sellers v. Contino, 327 F.Supp. 230 (E.D.Pa.1971); Epps v. Cortese, 326 F.Supp. 127, 131–132 (E.D.Pa. 1971); Kerrigan v. Boucher, 326 F. Supp. 647, 649 (D.Conn.1971); Hall v. Garson, 430 F.2d 430, 438 (5th Cir. 1970); Klim v. Jones, 315 F.Supp. 109, 115 (N.D.Cal.1970); Wheeler v. Adams Company, 322 F.Supp. 645, 651–653 (D. Maryland, 1971). But see Lynch v. Household Finance Corp., 318 F.Supp. 1111 (D.Conn.1970).

the view outlined in *Santiago* and accordingly hold that we have jurisdiction over plaintiffs' constitutional claims.

■ Before reaching the merits, it is necessary to consider defendants' contention that we must abstain.

■■ This action is brought under the federal Civil Rights Act, raising federal constitutional claims. Abstention in such cases is appropriate only when there is an unresolved question of state law which only the state courts can authoritatively construe. Lewis v. Kugler, 446 F.2d 1343, 1346 (3d Cir. 1971). King-Smith v. Aaron, et al., 455 F.2d 378 (3d Cir. 1972), at pp. 381–382.) However, that certain state judicial remedies may exist in the circumstances of this case is not a sufficient reason for refusing to exercise our jurisdiction. With certain exceptions,[4] exhaustion of state remedies is not necessary under the Civil Rights Act. Monroe v. Pape, 365 U.S. 167, 180–183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Santiago v. McElroy, 319 F.Supp. 284, 292 (E.D. Pa.1970). Rather, the propriety of abstention turns on the issue whether there is an unresolved question of state law determination of which might make unnecessary the consideration of federal constitutional claims. Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); University Day Care Center v. Temple University, 442 F.2d 1116 (3d Cir. 1971). The critical inquiry, therefore, on the question of the applicability of the abstention doctrine to the instant case is whether there is an uncertain state law issue. Defendants contend there is. We disagree.

The Defendants' chief argument on this score is simple. First, recognizing that the remedy of replevin with bond to regain possession of their personal property from distraining landlords is unavailable as a practical matter to low income tenants, because of financial inability to post a bond, they argue that the unresolved state law question which compels abstention is whether or not a tenant can stop a sale pursuant to 68 P. S. § 250.309 of distressed goods and retain or regain possession thereof by bringing the action in replevin, provided for in 68 P.S. § 250.306, *without bond.*[5] Second, defendants argue that were Pennsylvania courts to hold that the remedy of replevin without bond carries such consequences, this would cure any federal constitutional infirmity in the Pennsylvania statutory scheme.

Although we are not aware of any decision in which the Pennsylvania Supreme Court has faced the question whether replevin by a tenant under 68 P.S. § 250.306 must be with bond in order to halt the sale of distressed personal property, we believe the law of Pennsylvania is sufficiently clear that only replevin with bond achieves this result. 68 P.S. § 250.306; Pa.R.C.P. 1073; Pambosh Industries, Inc. v. Pittsburgh Western Land Corp., 30 Pa.Dist. & Co.R. 2d 712, 111 Pitts.Leg.J. 327 (1963); Degillio v. Harry F. Goeringer & Sons, 39 Pa.Dist. & Co.R.2d 691 (1966).

Defendants cite Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), in which the Supreme Court vacated the judgment of a three-judge court which had declared unconstitutional and enjoined enforcement of certain fishing laws and regulations of Alaska. The statute and regulations challenged in *Reetz* restricted eligibility for salmon net gear licenses for any particular area to those who had previously

---

4. See e. g., Potwora v. Dillon, 386 F.2d 74, 77 (2d Cir. 1967); Moore v. Carroll, 315 F.Supp. 1129 (E.D.Pa.1970).

5. See Pa.R.C.P. 1073.

held such licenses or had for any three years held a commercial license and had fished in that particular area. The plaintiffs were nonresident commercial salmon fishermen who were, by virtue of the statute and regulations under it, ineligible for licenses, and in their suit they attacked the statute on both federal and state constitutional grounds. The Alaska constitution deals specifically in two sections with fishing rights. In vacating the judgment of the lower court, the Court found significance in the fact that the Alaska constitutional provisions were directly related to the "same unique resource" which was the subject matter of the statute and regulations, and the Court was able to say "here the nub of the whole controversy may be the state constitution." 397 U.S. at 87, 90 S.Ct. at 790.[6] That is not this case. We are cited to no provision of the Pennsylvania Constitution directly relating to the respective rights of landlords and tenants. The defendants urge us to abstain to afford the Pennsylvania courts an opportunity to adopt a narrowing construction of the Pennsylvania statute which might obviate the necessity of reaching the constitutional questions presented here. In the circumstances of Reetz, that contention may have some force. There, the laws in question were passed in 1968, and the regulations involved had been in effect for less than a year. The landlord and tenant provisions under attack in the instant case have been in effect for twenty years, ample time for a narrowing construction had one been forthcoming. Likewise, defendants' reliance upon Fornaris v. Ridge Tool Co. et al., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970), appears to us misplaced. The statute involved in that case was Puerto Rico's Dealer's Contract Law, which provided that a Puerto Rican dealer's contract with a manufacturer is renewable indefinitely at the option of the local dealer unless the manufacturer has "just cause" to terminate. The Court reversed the decision of the Court of Appeals for the First Circuit, which had held unconstitutional those provisions of the Dealer's Contract Law having the effect of an impermissible retroactive alteration of contractual provisions. In reversing the Court of Appeals, the Supreme Court specifically adverted to its pronouncement in Bonet v. Texas Co., 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401 (1950) that, since Puerto Rico is a Spanish-speaking Commonwealth with a set of laws still impregnated with the Spanish tradition, "a Puerto Rican court should not be overruled on its construction of local law unless it could be said to be 'inescapably wrong,' " 400 U.S. at 43, 91 S.Ct. at 157, and noted that the "rather vague Puerto Rican law" had not been authoritatively construed by the Supreme Court of Puerto Rico. The special circumstances which required abstention in *Fornaris* are not present here. Haakenson v. Parkhouse, 312 F. Supp. 929 (E.D.Pa.1970), cited by Defendants, bears a strong resemblance to Reetz v. Bozanich, supra, and is inapposite for the same reason. In *Haakenson,* the statute relating to absentee ballots was a 1968 enactment, and the federal constitutional argument was dependent on the plaintiffs' claim that the statute was violative of a provision of the Pennsylvania Constitution, which had never been construed by the Pennsylvania courts, directly relating to absentee ballots. 312 F.Supp. at 933–934.

We hold, therefore, that abstention would be inappropriate in the circumstances of this case.

We define the class of plaintiffs to be the class of low income tenants residing in York County, Pennsylvania. By "low income tenants" we mean the class of tenants who have an income which qualifies them as "poor" under the guidelines

---

6. The three-judge court in *Reetz* also held that the licensing scheme was a clear violation of the Alaska Constitution. 297 F.Supp. at 306.

periodically published by the Office of Economic Opportunity.[7]

The plaintiffs' arguments that the Pennsylvania statute is unconstitutional are three in number: first, they argue that the statutory scheme is unconstitutional on its face because, by virtue of the statute, any tenant may be deprived of his property without notice and an opportunity to defend in violation of the due process clause of the Fourteenth Amendment; second, they argue that the Pennsylvania statutory scheme is unconstitutional on its face and as applied to the plaintiffs and the class they purport to represent because its requirement of a bond in the amount of twice the value of the property distrained as a condition to presenting legal defenses to a landlord's action in distraint creates an invidious discrimination based upon wealth and, therefore, denies them equal protection of the law; finally, the plaintiffs contend that "the mechanics of the procedure create an opportunity for abuses which accentuate the difficulties . . . [arising from the above features of the Act] . . . and lead to unjustified infringements upon the constitutionally protected rights of privacy and the sanctity of the home."

The question whether distress sales pursuant to 68 P.S. § 250.309 amount to a deprivation of property without procedural due process in light of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), was fully examined in the opinion of the court in Santiago v. McElroy, 319 F. Supp. 284, 293–295 (E.D.Pa.1970), and we adopt the views set forth there in holding that the provision authorizing sale of the tenant's property after distress violates the due process clause of the Fourteenth Amendment. We agree that the fact the Landlord and Tenant Act of 1951 provides for a statutory exemption from levy and sale is not sufficient to redeem the statutory scheme because the exemption is "not sufficiently generous to leaven the impact of the loss in a substantial manner." Santiago v. McElroy, supra, at 294. When they do not follow a hearing, before a tenant is deprived of his property, distress sales violate the principles of due process.[8]

## IV. CONCLUSIONS OF LAW

1. This Court has jurisdiction over plaintiffs' constitutional claims by virtue of 28 U.S.C. § 1343(3). See Lynch v. Household Finance Corp., 405 U.S. ——, 92 S.Ct. 1611, 31 L.Ed.2d 822, (Opinion of 3/23/72).

2. Under the circumstances of this case, abstention would be inappropriate. The motion to stay and the motion to dismiss will be denied.

3. This action is determined to be a class action on behalf of the class of low

---

7. "OEO Poverty Guidelines for All States Except Alaska and Hawaii

| Family Size | Nonfarm Family | Farm Family |
|---|---|---|
| 1 | $1,900 | $1,600 |
| 2 | 2,500 | 2,000 |
| 3 | 3,100 | 2,500 |
| 4 | 3,800 | 3,200 |
| 5 | 4,400 | 3,700 |
| 6 | 5,000 | 4,200 |
| 7 | 5,600 | 4,700 |

For families with more than 7 members, add $600 for each additional member in a nonfarm family and $500 for each additional member in a farm family." OEO Income Poverty Guidelines, Revised December 1, 1970.

---

8. Since the Musselmans were afforded a hearing on their liability for back rent before distraint proceedings were begun, injunctive relief as to them would be inappropriate.

income tenants residing in York County, Pennsylvania, whose income qualifies them as "poor" under the guidelines published periodically by the Office of Economic Opportunity.

4. The distress sale provision of the Pennsylvania Landlord and Tenant Act of 1951, 68 Pa.Stat.Ann. § 250.309, is violative of the due process clause of the United States Constitution and therefore invalid and void insofar as it provides for sales of goods found upon leased premises without a prior due process hearing.

5. The defendants, their agents and employees and all persons acting through, by and under them, will be permanently enjoined from selling, threatening to sell, advertising for sale, or removing from the leased premises, any property belonging to, or found in the homes of, members of the plaintiff class, pursuant to or under color of the provisions of the Pennsylvania law herein declared to be invalid and void.

6. Pursuant to Rule 23(d) (2) of the Federal Rules of Civil Procedure, the defendants, their agents and employees, and all persons acting through, by or under them, will be ordered to give notice of this judgment to members of the plaintiff class by including such notification in any notice of distraint hereunder issued which is or may be directed to a member of the plaintiff class.

7. The defendant Lucabaugh, his agents and employees, and all persons acting through, by and under him, will be permanently enjoined from breaking and entering any property occupied by members of the plaintiff class in order to execute a levy on property belonging to or found in the homes of such members of the plaintiff class under 68 P.S. § 250.302.[9] See LaPrease v. Raymours Furniture Co., Inc., 315 F.Supp. 716 (N.D.N.Y.1970); *cf.* Camara v. Municipal Court, 387 U.S. 523, 530–531, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1966).

Counsel will submit within 30 days an appropriate order in accordance with the foregoing.

HERMAN, District Judge:

I must respectfully dissent from the conclusion my colleagues have reached in this matter.

I would not reach the merits of the controversy because I firmly believe that this is a classic case for the three-judge court to rely on the abstention doctrine and refuse jurisdiction or in the alternative to retain the case and direct the plaintiff to proceed in the Pennsylvania Courts as was suggested by Mr. Justice Black in his dissent in Wisconsin v. Constantineau, 400 U.S. 433 (1970) at page 443, 91 S.Ct. 507, 27 L.Ed.2d 515. See also, the dissent of Mr. Chief Justice Burger in the same case at page 439; Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); City of Meridian v. Southern Bell T & T Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940) and Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970).

This identical question, the constitutionality of parts of the Landlord and Tenant Act of 1951, 68 Pa.Stat. §§ 250.-302–250.313, was before a three-judge court in the Eastern District occupying what must have been considerable manhours of judicial time with the result that it was determined that as far as Philadelphia County is concerned, the challenged section of the law violated the principle of due process and the defendants in *Philadelphia County* were enjoined from selling any property pursuant to § 250–309 of the Act. Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa. 1970).[1]

Then in Sellers v. Contino, 327 F. Supp. 230 (E.D.Pa.1971), a three-judge

---

9. Lucabaugh is the only defendant who broke in the door of a property in order to make a levy (N.T. 54–55).

1. A declaratory judgment was also entered declaring § 250.309 of the Act in violation of the Due Process clause of the U.S. Constitution.

court in the same judicial district again concerned itself with the same law, with the same result as to Delaware County. And I understand there is also an identical case in Berks County before another three-judge court.

In the instant case again many judicial man-hours were expended with the same result that in *York County* 8 constables there will be likewise enjoined. I have been advised that Dauphin County is contemplating a request for a three-judge court to consider the same law as it applies to that county and other counties may follow suit.

Costs to the litigants to begin an action in the state courts if abstention were followed here would be no factor for the plaintiffs are represented by lawyers employed by Tri-County Legal Services, and court costs are almost uniformly waived where, as here, the plaintiffs proceed in forma pauperis. Neither would any delay in commencing proceedings in the state court system affect these plaintiffs adversely since a preliminary injunction has effectively halted defendants from proceeding against them.

I do not have much doubt that my colleagues reach a correct result in condemning the law in question as it is applied here, but it seems to me that since the Pennsylvania Constitution contains a clause similar to the federal "Due Process" clause (Art. I § 10, Constitution of Pennsylvania, 1968, which speaks of "due course of law") and since the Uniform Declaratory Judgment Act is in effect in Pennsylvania (12 P.S. § 831 et seq.); since this is not a First Amendment case; and since the Pennsylvania Courts have never passed on the Act's constitutionality;[2] and since it has been in effect over 20 years it seems (although as the majority states, it is not necessary) quite appropriate that we abstain and permit the Pennsylvania Appellate Courts to decide the issue. This is especially true in this situation where

a decision by the Pennsylvania Supreme Court could put the entire matter to rest for the Commonwealth rather than for one county or federal judicial district and of course the United States Supreme Court could entertain an appeal from the Pennsylvania Supreme Court if necessary.

To paraphrase Mr. Chief Justice Burger in Constantineau, *supra*:

"Since no one could reasonably think that the judges of . . . [Pennsylvania] have less fidelity to due process requirements of the Federal Constitution than . . . [the Federal Courts] do, this case is, for me, a classic illustration of one in which we should decline to act until resort to state courts has been exhausted."

I respectfully dissent.

---

2. At least no appellate court decision to this effect has been called to our attention and we have found none.